754 So.2d 54 (2000)
Reginald SMITH, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D98-3396.
District Court of Appeal of Florida, Third District.
February 16, 2000.
Rehearing Denied March 8, 2000.
*55 Bennett H. Brummer, Public Defender, and Roy A. Heimlich, Assistant Public Defender, for appellant.
Robert A. Butterworth, Attorney General, and Jill K. Traina, Assistant Attorney General, for appellee.
Before GODERICH, GREEN, and RAMIREZ, JJ.
RAMIREZ, J.
Reginald Smith was charged and convicted of armed robbery with a deadly weapon, kidnaping with a deadly weapon, and aggravated assault with a deadly weapon. He was sentenced as a habitual violent felony offender to two life terms, plus thirty years in state prison. We reverse.
Smith was a customer at the barber shop of Albert Steven Turner, the alleged victim. Turner testified that on the date of the robbery, Smith, together with a friend, enticed Turner to the rear of the barber shop, shoved him into the bathroom and robbed him of his jewelry at knife point. Turner further testified that subsequent to the robbery, Smith tied his hands and legs and stated that he "was going to put [Turner] to sleep," to which the second robber replied "no." The State presented no evidence to corroborate Turner's testimony. The police never recovered the missing jewelry nor the knife allegedly used. No fingerprint evidence was presented and no witnesses could verify Turner's description of the robbery.
Detective King testified regarding his questioning of Smith at the police station. After advising Smith of his constitutional rights, Detective King asked him whether he had been involved in the robbery, and Smith replied by asking Detective King whether "anybody had seen a car leave." Detective King responded that somebody had and Smith then stated "well, you got me on that." During the trial, the prosecution, twice on direct and once on rebuttal, asked Detective King whether Smith had given a stenographically recorded statement. Detective King testified that he requested such a statement but Smith had refused. Smith claims that this was an improper comment on his right to remain silent. We agree.
In San Martin v. State, 705 So.2d 1337, 1346 (Fla.1997), the Florida Supreme Court discussed this very issue. On direct examination by the prosecutor, a detective testified as to the substance of the defendant's statement to the police and the circumstances under which the statement was given. After waiving his rights, the defendant gave an oral statement recounting his involvement in the robbery and shooting, but refused to give a stenographically recorded statement. Defense counsel objected that this testimony constituted an improper comment on the defendant's constitutional right to remain silent. The trial court overruled the objection, finding that, under the circumstances, the defendant's refusal to give a formal recorded statement was not an exercise of his right to remain silent. The supreme court agreed, quoting from McCoy v. State, 429 So.2d 1256, 1257 (Fla. 1st DCA 1983):
The accuracy and integrity of oral incriminating statements are frequent targets of defense counsel who often suggest the unfairness of the use of oral statements of an accused who has not *56 been afforded the opportunity to put his statement in writing. It is only reasonable that the State be permitted to elicit the fact that the accused was given the opportunity and declined.
The supreme court stated that the defendant freely and voluntarily discussed the events surrounding the robbery and homicide. He did not refuse further questioning, but simply refused to have his statement recorded stenographically. The defendant, unlike Smith in this case, did not exercise his right to remain silent and in fact gave further statements to the police on subsequent dates. Thus, the defendant's testimony was properly admitted.
In this case, however, the prosecution did not present Detective King's testimony to explain why the statement had not been stenographically recorded. Instead, the prosecutor emphasized Smith's refusal to give such a statement by making repeated references to the refusal to give a stenographically recorded statement and then arguing in closing that "[w]e know that the defendant did not want to give a [stenographic] statement and the reason should be rather obvious to you."
Clearly, the fact that Smith answered Detective King's initial questions does not mean that he does not have a constitutional right to refuse to give a stenographic statement. In State v. DiGuilio, 491 So.2d 1129, 1131 (Fla.1986), the supreme court stated: "The fact that DiGuilio answered a few questions first does not constitute a waiver of his fifth amendment privilege. Miranda states that an individual can invoke his right to remain silent `at any time prior to or during questioning.' Miranda v. Arizona, 384 U.S. 436, 473-74, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Michigan v. Mosley, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). Thus, comment on a defendant's invocation of his right to remain silent after he has answered some questions is constitutional error."
Furthermore, this testimony was not elicited after the witness was cross-examined regarding the failure to record the alleged statement stenographically. The matter was first educed on direct examination.
Smith next claims that he was improperly impeached by a statement, allegedly made to his probation officer at least five years prior, that he was likely to commit future crimes. When Smith testified, the prosecution asked him "did you ever tell somebody that when you're released, you will probably do the same thing again?" Smith denied making this statement and was subsequently impeached. We agree that the use of this statement to impeach was improper.
Section 90.608, Florida Statutes (1999), sets out who may impeach and how a witness may be impeached. The only provision arguably applicable in this case provides that one can properly impeach by "[i]ntroducing statements of the witness which are inconsistent with the witness's present testimony." Smith never testified regarding any conversation with his probation officer. Thus, the statement could not be inconsistent with any of his prior testimony.[1]
The jury obviously placed a great deal of weight on Smith's statement because, during deliberations, it requested a copy of the probation officer's report. The trial court responded that the document was not in evidence but, over defense objection, allowed the testimony to be read back to the jury.
*57 Further, the subject matter was clearly collateral as it was not relevant in the litigation to establish any fact of consequence, that is, relevant for a purpose other than merely to contradict the incourt testimony of the witness. See Dempsey v. Shell Oil Co., 589 So.2d 373, 377 (Fla. 4th DCA 1991) (quoting from C. Ehrhardt, Florida Evidence 294-95 (2d ed. 1984): "The test for determining whether a matter is collateral and non-material so that evidence is inadmissible to contradict the answer of the witness is whether the impeaching evidence would be admissible for any purpose other than the contradiction.").
Smith also claims that, during summation, the prosecutor personally attacked defense counsel, ridiculed the defense theory, vouched for the credibility of the prosecution witness, expressed personal opinions regarding the evidence, and referred to matters outside the record. The prosecutor argued, mistakenly, that there was nothing improper in commenting on the motivations of defense counsel. On retrial, the State is reminded that "[t]he purpose of closing argument is to present a review of the evidence and suggestions for drawing reasonable inferences from the evidence." Miller v. State, 712 So.2d 451, 453 (Fla. 2d DCA 1998).
Reversed and remanded for a new trial.
NOTES
[1] See Mills v. State, 681 So.2d 878, 880 (Fla. 3d DCA 1996) ("[i]n Florida, an exception to the so called collateral-matter rule exists where the collateral extrinsic evidence sought to be introduced concerns matters testified to by the witness on direct examination. [citations omitted] The witness is often said to have `opened the door.' Charles W. Ehrhardt, Florida Evidence § 608.1, 375-76 (1996 Ed.). `Under this concept, the adverse party may be able to introduce extrinsic evidence to contradict a specific factual assertion made during the testimony of the witness, even if it pertains to a collateral matter.' Id.)(emphasis added), and cases cited therein."