PER CURIAM.
Paul Rancourt challenges his conviction and sentence for kidnapping. and three counts of sexual battery. Rancourt and his codefendant, Daniel McLean, were *1072 found guilty of kidnapping and raping a young coed from Florida Southern College after offering her a ride to her dormitory. Rancourt was found to have raped the victim twice; McLean allegedly raped her once. As to the sexual batteries, each was found guilty as a principal of the other; thus, both Rancourt and McLean were convicted of three counts of sexual battery and one count of kidnapping. Both were sentenced to concurrent terms of life imprisonment on each count.
In this appeal Rancourt alleges: (l)-(2) the State failed to present sufficient evidence to support his convictions for kidnapping and sexual battery (as a principal); (3) prosecutorial misconduct; (4) the trial court erred by allowing a State expert to vouch for the victim’s credibility; (5) the trial court erred by excluding testimony pursuant to Florida’s Rape Shield Statute; and (6) further erred by admitting evidence of Raneourt’s refusal to give law enforcement officers a recorded statement. We affirm.
Rancourt and McLean were tried together. Rancourt testified in his defense at trial, but McLean did not. The facts adduced at trial are set forth in detail in the companion opinion issued in McLean’s case:
[T]he victim testified that on October 30, 1996, she went to a local bar in Lakeland, Florida. At closing time, the victim began looking for a ride back to her college dorm room. Jason Rancourt told the victim he would take her back to her dorm. The victim voluntarily went with Rancourt and entered the backseat of his car. [McLean] was asleep in the front passenger seat. After the victim noticed Rancourt had passed the dorms, she asked him where he was going. Neither Rancourt nor [McLean] responded, and the victim thought Ranc-ourt was going to take another route to her dorm. Rancourt then pulled the car over in the front yard of a house, opened the passenger door, and grabbed the victim out of the car. After the victim was removed from the car, [McLean] got into the driver’s seat and pulled the car up between 5 and 10 yards. The victim testified that Rancourt then dragged her behind some bushes and pushed her onto the ground, and the two then raped her. [According to the victim, Rancourt raped her first, McLean second, then Rancourt raped her a second time.]
Later that evening, the victim was examined by a physician, and semen was found inside her vagina. The physician determined, after DNA tests of both Rancourt and [McLean], that the semen taken from the victim matched Rane-ourt’s DNA. The physician was unable to match any semen with [McLean].
McLean v. State, 754 So.2d 176 (Fla. 2d DCA 2000). We would also note that both Rancourt and McLean cooperated with law enforcement by giving statements after the incident. McLean committed his statement to tape, while Rancourt’s statement was unrecorded.

Motions for Judgment of Acquittal

Rancourt first contends the trial court should have granted his motions for judgment of acquittal on the charge of kidnapping because the victim left the bar with him voluntarily and did not physically resist when he removed her from the car. Section 787.01(l)(a)(2), Florida Statutes (1999), defines kidnapping as “forcibly, secretly, or by threat confining, abducting or imprisoning another person against his will and without lawful authority, with intent to: ... [c]ommit or facilitate the commission of any felony.” According to the victim, Rancourt drove past her dorm on Lake Hollingsworth and offered no explanation when she asked why they were passing her dorm. After proceeding well beyond her dorm, Rancourt turned onto a road off Lake Hollingsworth, stopped the car, got out, and walked around the front of the car to the passenger side. Rancourt then opened the back door and dragged the victim, who was seated on the driver’s side, across the backseat and out of the car. He then dragged her into a nearby yard and pushed her down behind a group of hedges where the three remained concealed as the victim was repeatedly raped.
*1073 Although the victim accepted a ride from him, Rancourt essentially abducted her by traveling well beyond the predetermined destination without offering an explanation as to why. Moreover, Rancourt forcibly removed the victim from the car, dragging her behind hedges and purposefully concealing the spectacle from passing traffic. This conduct fits squarely within the statutory definition of kidnapping. We, therefore, find that Rancourt’s motion for judgment of acquittal on the kidnapping charge was properly denied.
Rancourt also contends his conviction for the third count of sexual battery (as McLean’s principal) should be reversed because the jury’s verdict is against the greater weight of the evidence. We disagree. Although Rancourt testified at trial that McLean did not participate in the rape, the victim’s testimony indicates she was assaulted by both men. The jury was therefore free to accept the victim’s version of the facts and to reject Rancourt’s. See Finney v. State, 660 So.2d 674 (Fla. 1995).

Prosecutorial Misconduct

After the rape, Rancourt allegedly called the victim at home and left a taped message on her answering service, the content of which remains unclear. Anticipating the introduction of this taped message in evidence, McLean’s attorney moved to sever the codefendant’s trials. In response to the motion, the prosecutor assured defense counsel and the court that the State would not publish the taped message to the jury. However, the State intended to, and did in fact, publish to the jury McLean’s tape-recorded statement given to law enforcement officers. Rancourt now argues that he did not join in McLean’s motion to sever because he mistakenly believed that the State was referring to McLean’s recorded statement to law enforcement officers, rather than the message Rancourt allegedly left on the victim’s answering service. Because McLean did not testify in his defense at trial, Rancourt now claims he was prejudiced by not having the opportunity to cross-examine McLean regarding portions of McLean’s recorded statement which conflicted with Rancourt’s trial testimony. We reject this argument because the transcript clearly indicates that the prosecutor was referring to the taped message Rancourt allegedly left on the victim’s answering service, rather than McLean’s recorded statement. The fact that Rancourt’s counsel replied, “No objection” when the State asked to publish McLean’s recorded statement to the jury supports our conclusion and convinces us of the disingenuousness of his argument.

Testimony Excluded Under the Rape Shield Statute

Rancourt next complains that the trial court erred in excluding Dr. Linkous’ testimony concerning the victim’s prior sexual history. Dr. Linkous examined the victim in the emergency room following the incident. His examination revealed tenderness to the' victim’s external and internal genitalia. Dr. Linkous testified that it is possible to have genital tenderness following a consensual sexual encounter. This testimony supported Rancourt’s defense of consent. When asked whether the degree of tenderness would depend upon a woman’s prior sexual experience, Dr. Linkous replied, “Certainly.”
Apparently, during her examination following the incident, the victim advised Dr. Linkous that she had not had sexual intercourse in over a year. McLean’s attorney sought to disclose this fact to the jury on cross-examination to suggest that the victim’s vaginal tenderness was due to prolonged abstinence, rather than a noncon-sensual sexual encounter. However, after an objection from the State, the trial court excluded this testimony pursuant to the Rape Shield Statute which precludes evidence of a victim’s prior sexual activity with anyone other than the accused. See § 794.022, Fla. Stat. (1999). Rancourt now argues the testimony should have been admitted because it was useful to his defense.
Although we agree that the doctor’s testimony would not have violated the *1074 Rape Shield Statute and was therefore erroneously excluded on that basis, the record indicates that McLean’s attorney sought to admit it, while Rancourt’s attorney did not. Rancourt’s attorney was first to cross-examine Dr. Linkous and completely failed to inquire about the victim’s last sexual encounter. Having failed to attempt to elicit this testimony on cross-examination, Rancourt cannot now contend that it would have been useful to his defense. We therefore find this issue has not been preserved for appellate review.

Expert Testimony Vouching for Victim’s Credibility

On direct examination, the prosecutor asked Dr. Linkous whether the victim behaved “in any way inconsistent with the way a rape victim would act?” The doctor responded, “No, she did not.” Rancourt now argues that this testimony improperly bolstered the victim’s credibility. Even if it did, the error complained of was not preserved in this case because McLean’s attorney lodged an objection, but Ranc-ourt’s attorney did not.

Improper Comment on Fifth Amendment Right to Remain Silent

In his final argument, Rancourt assigns error to Detective Ryan’s testimony concerning Rancourt’s refusal to give a tape-recorded statement. He claims the detective’s testimony was an improper comment on his Fifth Amendment right to remain silent.
The Florida Supreme Court’s ruling in San Martin v. State, 705 So.2d 1337 (Fla. 1997), controls this issue. The San Martin court held that an accused’s refusal to give a recorded statement after giving an unrecorded statement is not an exercise of his or her Fifth Amendment right to remain silent. Similar to Rancourt, the defendant in San Martin refused to give a tape-recorded statement after giving law enforcement officers a full recitation of his version of the robbery and homicide. Because San Martin had already freely and voluntarily discussed the crime with law enforcement officers, the court held that his later refusal to commit his statement to tape was not an exercise of his Fifth Amendment right to remain silent. Like San Martin, Rancourt freely and voluntarily spoke with law enforcement officers when questioned regarding his involvement in the rape. We find no distinction between San Martin’s and Rancourt’s subsequent refusal to provide tape-recorded statements.
Rancourt relies on Smith v. State, 754 So.2d 54 (Fla. 3d DCA 2000), in urging reversal on this issue; however, Smith bears a distinction. The detective in that case asked Smith whether he had been involved in the robbery, and Smith responded by asking the detective whether “anybody had seen a ear leave.” Id. at 55. On direct examination, the prosecutor asked the detective whether Smith had given a stenographically recorded statement. The detective then testified that he requested a recorded statement, but Smith refused. The Third District reversed Smith’s conviction, finding the detective’s testimony an improper comment on Smith’s right to remain silent. Citing the supreme court’s decision in San Martin, 705 So.2d 1337, the Third District reasoned that Smith exercised his right to remain silent prior to voluntarily giving an unrecorded statement. See Smith, 754 So.2d at 55. In the present case, unlike Smith, Rancourt gave a full description of the incident prior to refusing to give a taped statement. Under San Martin, Rancourt’s subsequent refusal to commit his description to tape was not a valid exercise of his Fifth Amendment right to silence.
Based on the foregoing, Rancourt’s judgment and sentences are affirmed in all respects.
Affirmed.
CAMPBELL, A.C.J., THREADGILL and STRINGER, JJ., Concur.