786 So.2d 38 (2001)
Humberto Pena FERNANDEZ, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D00-1653.
District Court of Appeal of Florida, Third District.
May 9, 2001.
Certification Denied June 20, 2001.
*39 Bennett H. Brummer, Public Defender, and Ada Manzano Avallone, Special Assistant Public Defender, for appellant.
Robert A. Butterworth, Attorney General, and Roberta G. Mandel, Assistant Attorney General, for appellee.
Before COPE, GODERICH and RAMIREZ, JJ.
COPE, J.
Humberto Pena Fernandez appeals his conviction for first degree murder. We affirm.
Defendant-appellant Fernandez argues that there was an impermissible comment on defendant's right to remain silent during his trial. We disagree.
The detective who investigated the homicide testified that the defendant waived his Miranda[1] rights and participated in a two-hour interview during which he denied knowledge of, or culpability in, the homicide. The detective testified, "Once I was done with the questioning, I asked him if he would be willing to formalize the statement by recording it, and he said no."
The defense objected that this was an impermissible comment on silence and moved for a mistrial. The trial court's rejection of the defendant's position on this issue was entirely correct.
The present case is similar to San Martin v. State, 705 So.2d 1337 (Fla.1997). In that case the detective
testified that San Martin gave an oral statement recounting his involvement in the robbery and shooting, but refused to give a stenographically recorded statement. Defense counsel objected that this testimony constituted an improper comment on San Martin's constitutional right to remain silent. The trial court overruled the objection, finding that under the circumstances, San Martin's refusal to give a formal recorded statement was not an exercise of his right to remain silent and thus [detective] Santos' testimony was admissible.
*40 We agree with the trial court. As the First District Court of Appeal explained in McCoy v. State, 429 So.2d 1256, 1257 (Fla. 1st DCA 1983),
[t]he accuracy and integrity of oral incriminating statements are frequent targets of defense counsel who often suggest the unfairness of the use of oral statements of an accused who has not been afforded the opportunity to put his statement in writing. It is only reasonable that the State be permitted to elicit the fact that the accused was given the opportunity and declined.
In the instant case, San Martin freely and voluntarily discussed the events surrounding the robbery and homicide. He did not refuse further questioning, but simply refused to have his statement recorded stenographically. San Martin did not exercise his right to remain silent and in fact gave further statements to the police on subsequent dates. Thus, Santos' testimony was properly admitted.
705 So.2d at 1346 (emphasis added).
Where, as here, a defendant has waived his Miranda rights and voluntarily given a statement to the police, it is not a comment on silence for the detective to explain that the defendant refused to memorialize the already-given oral statement in a tape recording. The defendant in such circumstances has already elected to speak. A refusal to write down, or record, what has already been said does not amount to invocation of the right to silence.
The defendant argues that reversal is required by this court's decision in Smith v. State, 754 So.2d 54 (Fla. 3d DCA), review denied, 773 So.2d 57 (Fla.2000), but that is not so. In Smith the defendant responded to a few initial questions and then refused to give a stenographic statement. Id. at 55. As the Smith panel viewed that record, Smith was not being asked to memorialize what he had already said. Instead, Smith was being asked to make a further statement before a stenographer, and in refusing to do so, he did invoke the right of silence. Id. at 56. During closing argument, the prosecutor in that case asked the jury, in effect, to draw an adverse inference against the defendant because he had failed to give a statementan argument which amounted to a comment on silence. Id. That case bears no resemblance to this one, where the defendant freely gave oral statements to the detective for two hours, but declined to memorialize what had already been said.
The defendant argues that it is impermissible for the State to ask the detective during direct examination whether the detective requested the defendant to memorialize his previously-given oral statement. For this proposition the defendant relies on Smith, which contains a passing comment that this issue cannot be raised on direct examination. Id. We treat this part of the Smith opinion as dictum.
The authoritative rule is found in the Florida Supreme Court decision in San Martin. In that case the detective was on direct examination when he testified that the defendant had given an oral statement but refused to give a stenographically recorded statement. 705 So.2d at 1346. The San Martin decision allows the State to raise this issue with the detective while on direct examination. The point of San Martin is to head off the possibility that the defense may argue to the jury in closing that the defendant's oral statement should be disregarded because it was not written down or recorded, where under the facts of the case, the defendant was given the opportunity to memorialize the oral statement and refused to do so.
*41 The defendant makes an additional argument that San Martin is distinguishable and should not be applied here. The defense points out that under the facts of that case, although San Martin refused to give a stenographic statement, he did give additional oral statements to the authorities on subsequent days. The defendant argues that since San Martin agreed to interviews on subsequent occasions, the jury would not reasonably conclude that San Martin had invoked his right to silence. The defense argues that the San Martin rule should not apply in the present case, because here (unlike San Martin) there is no indication that the defendant gave other oral statements on subsequent occasions.
We do not read the San Martin decision so narrowly. As already stated, the theory of San Martin is that a refusal to memorialize an already-given oral statement is not reasonably viewed as an invocation of, or comment on, silence. It makes no difference whether there were further oral statements on subsequent occasions. The San Martin court relied on the First District's earlier decision in McCoy, in which there were no further oral statements. 429 So.2d at 1257.[2]
Defendant next argues that there should be a reversal of the judgment because the transcript does not reflect that the interpreter took the interpreter's oath. "We conclude that this claim is barred because this was not fundamental error and there was no contemporaneous objection." Rodriguez v. State, 664 So.2d 1077, 1077 (Fla. 3d DCA 1995); see also § 924.051, Fla. Stat. (1999). Assuming for present purposes that the interpreter did not take the oath, the oath certainly would have been administered if this had been called to the attention of the trial court. Rodriguez, 664 So.2d at 1077.
During the trial the State played a tape of the telephone call to 911 which was made by a witness after the victim was stabbed. The telephone call was in Spanish, and the jury was provided an English language transcript. The defense requested an instruction that to the extent of any conflict, the jury should rely on the English language translation. The trial court refused to give the instruction. Assuming that the instruction should have been given, we fail to see how the defendant was conceivably harmed by its absence. It is hard to see how the tape could have been misinterpreted. In any event, the key evidence in the case was presented by the live witnesses at trial, including the person who made the 911 call.
Affirmed.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] McCoy court said:

The defendant freely and voluntarily discussed with the detective the events surrounding the homicides. At no time did the detective testify that McCoy refused to make any further statements. In fact, for aught that appears from the record, McCoy may have been perfectly willing to continue making oral statements. The detective's inquiry of McCoy as to whether he would put his statement in writing was a most reasonable request.
Id. at 1257. Similarly here, there was no refusal to make further oral statements. Of course, the detective did not want any further oral statements; he testified that he had completed his questioning. The detective simply desired to have the defendant memorialize what he had already said.