816 So.2d 187 (2002)
Tonnie Lee MARTIN, Appellant,
v.
STATE of Florida, Appellee.
No. 5D00-3127.
District Court of Appeal of Florida, Fifth District.
May 3, 2002.
James B. Gibson, Public Defender, and Rosemarie Farrell, Assistant Public Defender, Daytona Beach, for Appellant.
*188 Robert A. Butterworth, Attorney General, Tallahassee, and Belle B. Schumann, Assistant Attorney General, Daytona Beach, for Appellee.
SHARP, W., J.
Following a jury trial, Martin appeals from his judgment and sentences for robbery with a firearm,[1] aggravated fleeing and eluding,[2] and driving with a revoked license.[3] He argues on appeal that he is entitled to a new trial because the record fails to reflect that the trial judge swore the venire prior to the voir dire and failed to instruct them to answer truthfully. Martin also argues that he should be resentenced because the length of the sentence imposed after trial (35 years) was more than twice as long as the plea bargain (17 years) offered him. We affirm.
In this case the record fails to show that the prospective jurors were sworn prior to their voir dire examination and that the trial judge instructed them to tell the truth. This violates the requirements of Florida Rule of Criminal Procedure 3.300, if it occurred. The state argues that the prospective jurors could have been administered an oath in a common jury pool room prior to their appearance in the courtroom, and thus Martin failed to present this court with a sufficient record establishing error. See Gonsalves v. State, 2001 WL 1245964, 26 Fla. L. Weekly D2530, ___ So.2d ___ (Fla. 2d DCA 2001). We reject that argument. If this error had been preserved and we conclude it was not, then the burden would have been on the state to supplement the record in some manner to establish compliance with rule 3.300.
However, Martin failed to raise this objection at trial. Had counsel objected at trial the prospective jurors could have been sworn or if they had already been sworn, the judge could have noted that fact in the record. See Ellis v. State, 25 Fla. 702, 6 So. 768 (1889). In addition, Martin accepted the jury. Jury selection issues are deemed waived after acceptance of the jury, unless the objection is renewed, or the jury is accepted subject to an earlier objections. See, e.g., Joiner v. State, 618 So.2d 174 (Fla.1993) (defendant waived any objection to prosecutor's use of peremptory strikes against minority jurors where, without reserving earlier objection, defense affirmatively accepted the jury immediately before it was sworn); Stripling v. State, 664 So.2d 2 (Fla. 3d DCA 1995) (defense claims that trial court unduly restricted voir dire inquiry were not preserved for appellate review where defendant affirmatively accepted the jury and did not renew his objection at any time prior to swearing of the jury); Casimiro v. State, 557 So.2d 223 (Fla. 3d DCA), rev. denied, 567 So.2d 434 (Fla.1990) (defendant waived all objections concerning jury composition when defendant accepted jury panel); Springer v. State, 513 So.2d 736 (Fla. 3d DCA 1987) (if defendant objects before trial to possible interim service by one or more of his jurors, court must afford supplemental voir dire; however, that objection is waived if the defendant fails to raise or re-urge the objection before trial when supplemental voir dire could effectively be held).
Martin counters that this constituted fundamental error. But we have found no case so holding, and similar claims have been held not to rise to the level of fundamental error. See Fernandez v. State, 786 So.2d 38 (Fla. 3d DCA 2001) (claim that *189 judgment should be reversed because the transcript does not reflect that an interpreter used at the trial took the interpreter's oath is barred because there was no contemporaneous objection and this was not fundamental error); Rodriguez v. State, 664 So.2d 1077 (Fla. 3d DCA 1995) (claim that trial court erred in failing to have interpreter sworn as required by statute was barred because this was not fundamental error and there was no contemporaneous objection; matter could have been readily cured if timely called to the attention of the trial court).
Martin also takes the position that the sentence he received was presumptively vindictive because the reasons the judge gave for imposing a sentence longer than the plea offer were either unsupported by the record or legally impermissible.[4] Martin argues that the state had the burden of establishing the sentence was not vindictive or imposed to punish him for exercising his right to go to trial rather than accept the plea bargain, and it failed to do so.
A trial judge's role in plea bargaining is a difficult, "delicate" one.[5] It presents a minefield of problems and concerns around which trial judges must maneuver. First, they must assure themselves the defendant fully understands the content of the plea offered. Second, they must preserve their own impartiality in the matter so as to defend their ability to depart from the sentence should other pertinent factors later come to light. Third, they must not place themselves in the position of coercing a plea or later being accused of having imposed a harsher sentence because a defendant elected to go to trial. See Byrd v. State, 770 So.2d 311 (Fla. 5th DCA 2000). With regard to the latter concern, the Florida Supreme Court said in its latest pronouncement on the subject:
To avoid the potential for coercion, a judge must neither state nor imply alternative sentencing possibilities which hinge upon future procedural choices, such as the exercise of a defendant's right to trial. A record must be made of all plea discussions involving the court.
Warner, 762 So.2d at 514.
As in all such cases, what the record reveals about what the trial judge said or did is critical. In this case, immediately prior to trial, the state offered Martin a sentence of 17 years, if he would testify against his co-defendant, James.[6] The trial judge previously had said he would not become involved in the plea negotiations in any way. He also refused to indicate his "feelings" as to what he thought would be an appropriate sentence for Martin. Defense counsel stated she felt Martin would be convicted and that he would be facing a true life sentence.
The judge then engaged in the following colloquy:
THE COURT: The state has offered seventeen years. If you want to accept the seventeen years that's fine. If you don't want to accept the seventeen years, that's fine. I need to know you understand, on the downside as I'll say it, if you're acquitted, you walk out and I *190 hope you never show back up here again and you go on with your life, enjoy. If you're convicted, as your attorney has told you, you face a true life sentence. This is a first degree felony. How old are you?
MR. MARTIN: Twenty-three.
THE COURT: Twenty-three years old. You're a young man. If you're acquitted, have a wonderful life, it goes on. If you're convicted, [the prosecutor] has already indicated he'll be seeking a life sentence. Is that correct?
[PROSECUTOR]: Yes.
THE COURT: Seeking life sentence. Life in the state of Florida means the rest of your life for all practical purposes, will be spent in the prison system. I want to make sure you understand that.
MR. MARTIN: Yes.
THE COURT: All bets are off at that stage. In our society you're placed in prison. I'm not saying this to scare you or to force you into anything. I'm making sure you consider it.
MR. MARTIN: Yes.
THE COURT: It's your life. You know it better than anybody as far as the decision you have to make. I want to make sure you understand right now the offer is seventeen years.
MR. MARTIN: Yes.
THE COURT: If you want to accept that, you have every right to accept it or reject. If you reject, if you go to trial, you win, you walk out, of here a free man. You still have two other charges, aggravated fleeing and eluding and felony driving while license revoked. Those are second and third degree felonies, some what minor compared to the life felony. As I tell people, if you're acquitted, God bless you, go out of here. If you're convicted, you may face a true life sentence. Do you understand that?
MR. MARTIN: Yes.
THE COURT: Take a second. Talk with your attorneys one last time.
[DEFENSE COUNSEL]: He indicates he wants to go to trial.
THE COURT: You want to go to trial. You're rejecting the plea offer by the State?
MR. MARTIN: Rejecting the plea offer.
We think this case is factually distinguishable form Byrd. The colloquy quoted in that case indicated that the trial judge urged Byrd to accept the plea offer of 30 years, describing it as a "steal." He also stated expressly that Byrd would not get a sentence that low if he went to trial and indeed he later imposed a 45 year sentence. That kind of involvement in the plea bargain process falls squarely within the prohibition of Warner. He stated, or clearly implied, that Byrd's sentence hinged upon "future procedural choices." Under those circumstances, the longer sentence imposed after trial would give rise to a presumption of vindictiveness, which the state would have the burden of overcoming.[7]
In contrast, in this case, the trial judge removed himself from the plea bargain process. He neither urged Martin to accept nor reject the plea bargain. He gave no indication what his sentence would be and expressly declined to do so. He did make sure that Martin understood the terms of the plea bargain, and he explained the maximum punishment for the crime-life-was what the state was seeking. *191 And, he made sure Martin made the decision after consultation with his attorneys.
In so doing, we think the trial judge carried out his judicial responsibilities as well as he could. He crossed the minefield without error. To hold that the presumption of vindictiveness arose based on this record would place trial judges in an impossible quandary. The plea bargain offered by the state would become the presumptive sentence, above which the trial judge could not go without carrying the burden of showing lack of vindictiveness. It would limit the trial judge's discretion in sentencing to a degree not required by Warner.
In Richardson v. State, 809 So.2d 69 (Fla. 2d DCA 2002), our sister court ruled in a similar case where the trial court was not involved in plea negotiations and the defendant rejected the plea offer, that no presumption of vindictiveness arose when the defendant received a longer sentence than was offered by the plea bargain. The record revealed no affirmative reason for the longer sentence, but it was within the guidelines. We agree with the Richardson court, which said:
While there are cases recognizing the vindictiveness challenges when the judge has been involved in the plea negotiations, this critical fact is not present in the record of this case. In the absence of judicial involvement in the plea negotiations, the burden was on [the defendant/appellant] to prove actual vindictiveness on the part of the sentencing judge, a burden he has not met.
809 So.2d at 70.
Since the trial judge in this case, as in Richardson, was not involved in the plea negotiations nor did he in any way coerce or threaten Martin if he elected to go to trial, no burden to disprove vindictiveness arose. Rather, Martin failed to meet his burden of showing the trial judge acted with actual vindictiveness in imposing the sentence.
AFFIRMED.
THOMPSON, C.J., and PALMER, J., concur.
NOTES
[1] § 812.13(2)(a), Fla. Stat.
[2] § 316.1935(3), Fla. Stat.
[3] § 322.34(5), Fla. Stat.
[4] The trial judge gave as reasons the fact that at trial evidence was presented that Martin had instructed his armed co-defendant to execute the victim during the commission of the robbery, and the judge observed that witnesses had been beaten up before coming to court.
[5] State v. Warner, 762 So.2d 507, 510 (Fla. 2000).
[6] Earlier the state had offered Martin a 15 year plea bargain and a dialogue similar to the one involving the later 17 year offer occurred. Martin did not respond as to whether or not he accepted it.
[7] See McDonald v. State, 751 So.2d 56 (Fla. 2d DCA 1999). See also Stephney v. State, 564 So.2d 1246 (Fla. 3d DCA 1990).