RAMIREZ, J.
 

 Augustin Fleurimond appeals his final judgment of conviction and sentence. We reverse because the State violated the order in limine and made improper closing arguments, thus the trial court erred in not sustaining Fleurimond’s objection to the police detective’s testimony and in denying his motion for mistrial. In addition, we also conclude that Fleurimond’s four convictions for possession and trafficking by possession of a single quantum of cocaine inside the house violated the protection afforded by the Double Jeopardy Clause.
 

 I.
 

 Fleurimond was charged by information with two counts of trafficking in cocaine and two counts of sale of cocaine within 1000 feet of a school. Co-defendant Gerald Lelieve was charged in the same information with one count of trafficking in cocaine. Fleurimond and Lelieve were tried together in a jury trial on June 2007.
 

 Before trial, Fleurimond’s counsel made a motion in limine requesting that the State be prohibited from introducing evidence concerning prior drug activity at the house where the events in this case occurred. The State did not oppose the motion, and the trial court granted it.
 

 During the trial, the State called its first witness, Detective Gayle, concerning her work as a member of the crime suppression unit. The trial judge sent the jury to the jury room and asked the prosecutor if she had instructed the law enforcement officers regarding the motion in limine which had been granted. The prosecutor told the judge that she had, in fact, instructed the witnesses, including Detective Gayle and Detective Fernandez, but that she could not state if she had instructed Detective Belfort.
 

 The State called Detective Belfort to the stand after Detective Gayle finished testifying. Detective Belfort described the location where the events took place and then the prosecutor elicited the following testimony:
 

 Q. He can sit down. Now, at about 7:00 o’clock p.m., what was it that happened?
 

 A. We were set up at the location. We were doing a — had a surveillance at our location with — that we knew to be selling narcotics.
 

 Defense counsel objected and moved for a mistrial based on Detective Belfort’s viola
 
 *1143
 
 tion of the motion in limine. After the testimony was read back for the judge, counsel argued that it constituted improper “high crime area” testimony. The judge asked the prosecutor if she had obeyed the court’s prior order to instruct all officers to not give any such testimony. The prosecutor admitted that she had not complied with the court’s order. When asked why she had disobeyed the court’s order, the prosecutor responded, “Judge, I mean, I absolutely — the only — you are right.” The prosecutor then argued that the testimony was not improper because the testimony only explained why the detectives were at that particular house. The judge deferred ruling on the motion for mistrial and indicated that he was not sure that he disagreed with the State’s argument that the testimony was relevant to explain why the detectives were at the house. At the close of all the testimony, the court denied the motion for mistrial.
 

 The evidence adduced at trial indicated that at approximately 7:00 p.m. on October 11, 2006, police detectives set up surveillance at the house in question. Detectives Gayle and Belfort parked a surveillance van on the side of the road in front of the house, ten to fifteen feet from the front door of the house. Detective Gayle testified at trial that both she and Detective Belfort watched the house from the back of the van where they were both lying on them stomach on a couch looking out the back window. Detective Belfort testified at trial that he first watched the house from the driver’s seat of the van and then moved to the back of the van. Detective Gayle testified that the detectives did not have binoculars inside the van. Detective Belfort testified that the detectives always had a pair of binoculars in the van and that he had used binoculars on that day.
 

 After watching the house for a period of time, Detective Gayle observed a white male approach the front door of the house and knock on the door. A man opened the door, took money from the white male, and closed the door. At trial, Detective Gayle identified the man who opened the door and took the money as Fleurimond. Detective Gayle saw Fleurimond return to the door after a few seconds and hand a small item to the white male. The white male walked away from the house a short distance and then entered another house nearby. They did not approach the white male because it would have shut down the surveillance operation.
 

 Detectives Gayle and Belfort next observed a burgundy van driven by a black male park across the street from the house. The black male got out of the van, walked across the street, and knocked on the front door of the house. A man opened the door and the black male gave him some money. Both detectives identified the man who opened the door as Fleurimond. The detectives testified that after Fleurimond took the money from the black male and moved away from the door, Fleurimond returned to the door and gave the black male a small item. The black male returned to his van and drove away. The detectives contacted other units on the scene by radio and advised them to stop the burgundy van. When the detectives stopped the van, they recovered cocaine and marijuana from the van.
 

 Detectives Gayle and Belfort then observed a white van drive up and park across the street from the house. A black male wearing a red shirt and jeans got out of the white van and walked up to the front door of the house. At trial, both detectives identified Lelieve as the man who got out of the white van and walked up to the front door of the house. According to the detectives, Fleurimond opened the door, Lelieve gave him money, and Fleurimond moved away from the door.
 
 *1144
 
 After a few seconds, Fleurimond returned to the door and handed Lelieve a plastic bag which Lelieve put in his waistband. Lelieve drove off in the white van and the detectives advised the other units what they had seen.
 

 Detective Gonzalez responded to the call put out by the surveillance detectives and stopped a white van being driven by Le-lieve two minutes after he received the call. A few other passengers were inside the van. Gonzalez testified that it was “nighttime” and dark when he stopped the van. Gonzalez arrested Lelieve and impounded a plastic bag containing 49.9 grams of cocaine from his groin area.
 

 After Lelieve was taken into custody, officers moved in on the house being watched by Detectives Gayle and Belfort. They entered the home and Detective Edward Joseph found Fleurimond inside the bathroom. No one else was inside the house. No contraband was found on Fleu-rimond. A drug detection dog found a white substance on the floor of a bedroom at the rear of the house. Inside a closet in that bedroom, on the top shelf, Morgan found a plastic bag containing a “cookie” which Morgan described as cocaine used to make crack cocaine. The weight of the cocaine found on the shelf in the closet was 36.2 grams. The officers also found a wooden box containing drug paraphernalia inside a cabinet in that same bedroom.
 

 Fleurimond testified at trial that he did not live at the house where he was arrested. He lived in a house nearby, and he worked at a nearby car wash. On the day in question, he got off work at 7:00 p.m. He didn’t have any running water at his house so he decided to take a shower at the house being watched by the detectives. Fleurimond testified that he knew the lady who owned that house and she had lived in the neighborhood for the past twelve or thirteen years. He walked up to the house and spoke to the landlady who was outside the house with her daughter. He also saw a man doing yard work outside the house.
 

 Fleurimond testified that he was given permission to use the bathroom in the house to take a shower. He entered the house and walked straight to the bathroom. He was wearing a pair of blue shorts and he had a towel. He had removed his shoes after entering the bathroom. He was inside the bathroom for two or three minutes when he heard a commotion outside the bathroom. As he was standing with his back to the bathroom, police officers rushed into the bathroom and slammed him down into the bathtub. The officers searched him and did not find anything. Fleurimond testified that he did not sell any drugs on that day.
 

 At the conclusion of all the testimony at trial, the court reduced the two counts of sale within 1000 feet of a school to two counts of possession of cocaine with intent to sell. During the charge conference, the trial judge expressed concern over whether Fleurimond could be convicted of two counts of trafficking in cocaine based on a single criminal episode. Defense counsel argued that because both quantities of cocaine had come from a single source, Fleu-rimond could not be convicted of two counts of trafficking in cocaine. The State argued that Fleurimond could be convicted of one count of trafficking based on the quantity of cocaine sold to Lelieve, and another count of trafficking based on the quantity of contraband found in the house. The judge initially ruled that Fleurimond could only be convicted of one count of trafficking, but then immediately reversed himself and allowed the State to seek convictions for two counts of trafficking. The jury was subsequently instructed on two counts of trafficking in cocaine based on
 
 *1145
 
 Fleurimond’s possession of cocaine in excess of 28 grams but less than 200 grams.
 

 During the State’s closing argument, the prosecutor told the jury that Fleuri-mond had been flushing drugs down the toilet when the police officers found him in the bathroom. Defense counsel objected on the ground that no such evidence had been presented at the trial. The judge sustained the objection and told the jury that no such testimony had been presented at the trial. Then, notwithstanding the trial judge’s ruling reducing the charges of sale within 1000 feet of a school to charges of possession with intent to sell, the prosecutor argued to the jury, “All of this next to an elementary school, of all places.” When defense counsel objected to this argument based on the court’s ruling reducing the charges, the judge initially overruled the objection and the prosecutor repeated, “All of this next to an elementary school.” The trial judge then stated, “I’m sorry. I’m sorry. Sustained.” Finally, the State argued, “Well, how fair is it to Miami-Dade County that there’s people out there, these two individuals — .” Defense counsel’s objection to this argument was met with the judge stating, “Stipulated. You need to say good-bye.” Defense counsel subsequently moved for a mistrial based on the cumulative prejudicial effect of the prosecutor’s improper closing argument. The trial court denied the motion.
 

 The jury deliberated over the course of two days and sent numerous questions to the trial judge. The jury’s last two questions before delivering its verdict were, “If we cannot come to agreement is it a hung jury or do we NEED to decide” (emphasis in original), and “Is there any positive id [sic] of the defendants in the depositions of Gayle and Belfort.” The jury eventually returned verdicts finding Fleurimond guilty of two counts of trafficking in cocaine, and two counts of possession of cocaine as a lesser included offense of trafficking in cocaine. The court entered adjudications of guilt for two counts of trafficking in cocaine and two counts of possession of cocaine.
 

 At subsequent sentencing hearings, Fleurimond’s counsel renewed his objection to being convicted of two separate counts of trafficking in cocaine. The court ruled that Fleurimond could be convicted of two counts of trafficking. With both trafficking convictions scored on the sentencing guidelines scoresheet, the judge sentenced Fleurimond to the minimum permissible sentence of 56.27 months in state prison, with a three-year mandatory minimum sentence. The court also imposed sentences of 56.27 months for the two convictions of possession of cocaine, and ordered the sentences to be served concurrently.
 

 II.
 

 First, with regard to the motion in limine issue, Florida law disapproves references to the area in which a defendant is observed as a location known to be a place where drugs are sold because such evidence is irrelevant to the issue of guilt.
 
 Lowder v. State,
 
 589 So.2d 933 (Fla. 3d DCA 1991). As stated in
 
 Lowder,
 
 “In a prosecution for possession of illegal drugs, the fact that a police officer knows that an arrest scene is a reputed narcotics area does not prove anything in issue and is ‘patently prejudicial.’ ”
 
 Id.
 
 at 935.
 

 The Florida Supreme Court has addressed this issue. The Court held that reversal was appropriate on the following facts:
 

 During his opening statement the prosecutor described the area in which the defendant was arrested as “an area that is known to be inhabited by drug users.” Later during the trial, a police officer
 
 *1146
 
 testified that he went up the alley in which the arrest was made because “there had been several narcotics arrests made in that area; and the bar at 22nd and Sims has quite a reputation for narcotics in that area.” The inference drawn from this testimony was patently prejudicial to Beneby, and the conviction was properly reversed.
 

 Gillion v. State,
 
 573 So.2d 810, 811 (Fla.1991) (discussing
 
 Beneby v. State,
 
 354 So.2d 98 (Fla. 4th DCA 1978)).
 

 This Court followed
 
 Beneby
 
 in
 
 Cabral v. State,
 
 550 So.2d 46 (Fla. 3d DCA 1989). There, the officer told the jury that the place of the arrest was “ ‘well known for illegal narcotics’ use and that the police had ‘received complaints’ that drugs were being sold in the defendant’s apartment complex.”
 
 Cabral,
 
 550 So.2d at 47. This Court ruled that the testimony “did not prove anything in issue and served only to unduly prejudice the jury.”
 
 Id.
 
 Under the circumstances of the case, the error was not harmless, and a new trial was ordered.
 
 Id.
 

 The Florida Supreme Court also addressed the issue in
 
 State v. Johnson,
 
 575 So.2d 1292 (Fla.1991), where the Court approved
 
 Johnson v. State,
 
 559 So.2d 729 (Fla. 4th DCA 1990). In that’ case, the arresting officers testified about “the reputation of the location where the arrest was made as a high crime area,” and said that “ ‘it is a predominantly black neighborhood, but very well known for high school narcotics, prostitution to robberies and burglaries.’ ” 559 So.2d at 729. A new trial was ordered, and the concurring judge pointed out that under the circumstances, the error was not harmless.
 
 Id.
 
 at 730.
 

 Here, the police detective’s testimony that the house where he observed Fleuri-moncl was a location that the detective knew to be selling narcotics is exactly the type of testimony condemned as “patently prejudicial” by Florida courts. Defense counsel and the judge did everything possible to prevent such prejudicial comments to infiltrate the trial. Counsel filed a motion in limine. Instead of presenting the arguments that they later made, the prosecution did not oppose the motion. The judge then reminded the prosecutor to tell the witnesses that he had granted the motion in limine. Once the prosecution failed to comply with the judge’s orders, the trial court should have either granted the motion for mistrial or immediately sustained the objection and given a curative instruction. Unfortunately, the court did neither.
 
 [1]
 

 The instances where this type of irrelevant testimony manages to invade trial proceedings are regrettably frequent. For example, in
 
 Hill v. State,
 
 980 So.2d 1195 (Fla. 3d DCA 2008), this Court reversed a conviction for drug possession based on a police officers’ testimony which was very similar to the testimony of the police detective in this case. In
 
 Hill,
 
 the defendant was charged with possession of heroin with intent to sell.
 
 Id.
 
 at 1196. His arrest resulted from a drug surveillance operation in the Overtown area of Miami.
 
 Id.
 
 At trial, a police officer who was part of the surveillance operation testified that he observed the defendant approach a parked Jaguar, take a small plastic bag out of his pocket, and hand the bag to an occupant of the car in return for money.
 
 Id.
 
 at 1197. Before trial, the defense filed a motion in limine specifically requesting that the State be prohibited from introducing evidence that the sale took place in a high crime area.
 
 Id.
 
 The trial court granted
 
 *1147
 
 the motion, but at trial one of the surveillance team members testified that they were involved in a surveillance based take-down.
 
 Id.
 
 He stated, “That’s where we watch a certain area for activity that’s going on. That we got reports of activity going on in particular narcotics sales and-”
 
 Id.
 
 The defense objected, based on the fact that the testimony was the subject of a previous motion in limine, but the trial court overruled the objection.
 
 Id.
 

 On appeal, this Court held that the trial court erred in not sustaining the objection to the officer’s testimony. We stated:
 

 We conclude that the objection should have been sustained. The Florida Supreme Court has said that a brief statement about why an investigation occurred is permissible.
 
 Keen v. State,
 
 775 So.2d 263, 270-76 (Fla.2000). However, the court explained that “when the only relevance of such a statement is to show a logical sequence of events leading up to an arrest, the better practice is to allow the officer to state that he acted upon a ‘tip’ or ‘information received,’
 
 ivithout going into the details of the accusatory information.” Id.
 
 at 270 (quoting
 
 State v. Baird,
 
 572 So.2d 904, 908 (Fla.1990)).
 

 Unfortunately, the Sergeant’s testimony informed the jury the police knew that confirmed drug sales were taking place in the neighborhood. Based on this statement the jury could conclude that if Hill were in the area it was because he was there to sell drugs. “In a prosecution for possession of illegal drugs, the fact that a police officer knows that an arrest scene is a reputed narcotics area does not prove anything in issue and is ‘patently prejudicial’.”
 
 Lowder v. State,
 
 589 So.2d 933, 935 (Fla. 3d DCA 1991).
 

 Id.
 
 at 1197-98.
 

 As in
 
 Hill,
 
 the State charged Fleuri-mond with possession of narcotics based on what was allegedly witnessed by members of the police surveillance team in question. As in
 
 Hill,
 
 the defense filed a motion in limine to prevent any prejudice to Fleurimond from any police surveillance team members testifying that the area in which Fleurimond was observed was a location known to be an area where drugs were sold. As in
 
 Hill,
 
 the trial court granted that motion. Commendably, the trial court judge took the extra precaution of asking the prosecutor to confirm that she had instructed the police officer witnesses regarding the motion in limine that had been granted. The prosecutor stated that she had so instructed some of the officers, but was not sure if all of the officers had been so instructed. The judge then stated, “I don’t want' anything, any testimony about high crime area, any previous contact with anybody.” The prosecutor replied, “Surely, Judge. Understood.”
 

 Incredibly, minutes later, one of the members of the police surveillance team gratuitously interjected the exact type of testimony that the motion in limine had tried to prevent. As we established in
 
 Hill,
 
 the detective’s testimony was not admissible to explain why the detectives were at the house. Thus, the trial court here erred when it failed to sustain Fleuri-mond’s objection to that testimony. The State would have to prove beyond a reasonable doubt that the trial court’s error did not affect the verdict.
 
 State v. DiGuilio,
 
 491 So.2d 1129 (Fla.1986). When viewed in conjunction with the State’s closing argument, we conclude that the error was harmful and requires reversal and remand for a new trial.
 

 III.
 

 Turning to Fleurimond’s second issue on appeal, we agree that the trial
 
 *1148
 
 court abused its discretion in denying the motion for mistrial based on the cumulative effect of the improper comments made by the prosecutor during closing argument. The purpose of closing argument is to present a review of the evidence and suggestions for drawing reasonable inferences from the evidence.
 
 Smith v. State,
 
 754 So.2d 54 (Fla. 3d DCA 2000). Here, the prosecutors violated this well-established principle in their closing arguments to the jury and consequently deprived Fleurimond of a fair trial.
 

 A.
 

 First, the prosecutor told the jury in opening statement that when police officers went into the house that had been under surveillance, they found Fleurimond attempting to flush drugs down the toilet. The only place the defendant was flushing drugs down any toilet was in the prosecutor’s imagination because, during trial, the State presented no such evidence. During closing argument, the prosecutor told the jury:
 

 Now, this is all being radioed. This is not happening in split seconds. It’s happening quickly, but time is elapsing. And then the police go in and they find Mr. Fleurimond in the bathroom flushing the drugs down the toilet.
 

 [Defense counsel] Objection, Your Hon- or. Absolutely no proof of that.
 

 It is well settled that a prosecutor must confine closing arguments to evidence in the record and must refrain from comments that could not be reasonably inferred from the evidence.
 
 Wilson v. State,
 
 798 So.2d 836 (Fla. 3d DCA 2001). Although certainly colorful and highly probative had there been such evidence, the prosecutor’s statement violated the prohibition against making comments that could not be reasonably inferred from the evidence.
 

 B.
 

 Fleurimond initially was charged with two counts of sale of cocaine within 1000 feet of a school. However, at the end of the trial, the court reduced the two counts of sale within 1000 feet of a school to two counts of possession of cocaine with intent to sell. Notwithstanding this fact, the prosecutor twice during closing argument implored the jury to consider the fact that the charged offenses had been committed near an elementary school. The prosecutor stated:
 

 All of this next to an elementary school, of all places.
 

 [Defense counsel]: Judge, I object to that. That’s not part of the evidence anymore.
 

 THE COURT: Overruled.
 

 [Prosecutor]: All of this next to an elementary school.
 

 THE COURT: I’m sorry. I’m sorry. Sustained.
 

 Closing arguments “must no be used to inflame the minds and passions of the jurors so that their verdict reflects an emotional response to the crime or the defendant rather the logical analysis of the evidence in light of the applicable law.”
 
 Jackson v. State,
 
 832 So.2d 773, 778 (Fla. 4th DCA 2002). Accordingly, this argument was improper.
 

 C.
 

 Finally, during closing argument, the prosecutor improperly appealed to the jury’s community sensibilities by arguing how unfair it was to Miami-Dade County that people were trafficking in narcotics. The prosecutor stated: “It wasn’t fair to Mr. Fleurimond that we didn’t have the video. It wasn’t fair; that this lack of evidence wasn’t fair. Well, how fair is it to
 
 *1149
 
 Miami-Dade County that there’s people out there, these two individuals?”
 

 Florida courts consistently have condemned impassioned arguments which appeal to the jury’s community sensibilities or civil conscience.
 
 Smith v. State,
 
 818 So.2d 707, 710 (Fla. 5th DCA 2002);
 
 Otero v. State,
 
 754 So.2d 765, 769 (Fla. 3d DCA 2000);
 
 Birren v. State,
 
 750 So.2d 168, 169 (Fla. 3d DCA 2000). As such, this appeal to the jurors by the prosecutor was error.
 

 Defense counsel moved for a mistrial based on the cumulative effect of the improper closing arguments. However, the trial court denied the motion. A trial court’s ruling on a motion for mistrial is subject to an abuse of discretion standard of review.
 
 Goodwin v. State,
 
 751 So.2d 537, 546 (Fla.1999). Further, a motion for mistrial should be granted when it is necessary to ensure that the defendant receives a fair trial.
 
 Mendoza v. State,
 
 964 So.2d 121, 131 (Fla.2007). Although taking each of the prosecutors’ improper comments during closing argument by themselves might not be so prejudicial as to warrant a mistrial, certainly the cumulative effect of these three improper comments required the granting of a mistrial to ensure that Fleurimond received a fair trial. Thus, the trial court abused its discretion in denying the motion for mistrial based on the cumulative prejudice from these improper comments in closing argument, plus the error described in part II of this opinion.
 

 IV.
 

 With regard to Fleurimond’s last point on appeal, the double jeopardy issue, we believe that Fleurimond’s argument has merit. Dual convictions for trafficking and for simple possession of the same type of drugs, found at the same time, even though found in different locations, constitutes a double jeopardy violation.
 
 Gibbs v. State,
 
 698 So.2d 1206 (Fla.1997);
 
 Romain v. State,
 
 973 So.2d 1252 (Fla. 5th DCA 2008);
 
 McAdory v. State,
 
 933 So.2d 692 (Fla. 2d DCA 2006);
 
 Robinson v. State,
 
 901 So.2d 1027, 1028-29 (Fla. 4th DCA 2005).
 

 Moreover, dual convictions for possession of the same type of drugs, found at the same time, even though found in different locations, also constitutes a double jeopardy violation.
 
 Wiggins v. State,
 
 967 So.2d 417, 418 (Fla. 1st DCA 2007);
 
 Coward v. State,
 
 944 So.2d 532 (Fla. 4th DCA 2006);
 
 McGlorthon v. State,
 
 908 So.2d 554, 556 (Fla. 2d DCA 2005);
 
 Jackson v. State,
 
 418 So.2d 456, 458 (Fla. 4th DCA 1982).
 

 Here, Fleurimond was convicted of two counts of trafficking in cocaine by possession and two counts of possession of cocaine, all based on his possession of a single quantum of cocaine. The State contended that he could be convicted of one count of trafficking based on the quantity of cocaine sold to Lelieve at the front door of the house, and another count of trafficking based on the quantity found in the house. However, as held in
 
 Jackson,
 
 there is no legal distinction “between the produce leaving the peddler’s hand or in his pocket and that still on the push cart.”
 
 Jackson,
 
 418 So.2d at 458. Consequently, Fleurimond’s four convictions for possession and trafficking by possession of a single quantum of cocaine inside the house constitutes a double jeopardy violation.
 

 V.
 

 Based on the foregoing, Fleurimond’s judgments of conviction and sentences are reversed, and the ease is remanded to the trial court so that Fleurimond be granted a new trial.
 

 
 *1150
 
 Reversed and remanded with instructions.
 

 [1]
 

 . Because of the State's improper closing argument, we need not decide if this issue alone would warrant reversal. Certainly our determination of whether this error was harmless would have to be viewed in the context of the entire trial.