# Third District Court of Appeal

## State of Florida

Opinion filed April 1, 2015.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D13-1533
Lower Tribunal No. 06-30750
_____

**Walter Bailey,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Monica Gordo, Judge.

Carlos J. Martinez, Public Defender, and Susan S. Lerner, Assistant Public Defender, for appellant.

Pamela Jo Bondi, Attorney General, and Douglas J. Glaid, Assistant Attorney General, for appellee.

Milbank, Tweed, Hadley & McCloy, LLP, and Dorothy Heyl (New York); Seth E. Miller and Melissa Montle (Tallahassee), for Innocence Project of Florida, Inc., as amicus curiae.

Before WELLS, SALTER and LOGUE, JJ.

SALTER, J.

Walter Bailey appeals his convictions and sentences for murder, attempted murder, robbery with a firearm, and burglary. His appeal addresses (a) an order excluding a defense expert witness on eyewitness identification and (b) claims of prosecutorial misconduct during the presentation of the State's case and in closing argument. We affirm on each of these issues.

I.    Proceedings in the Circuit Court

In September 2006, Geneva Nottage was shot and seriously injured in the apartment of Royston Smith, her boyfriend. During that incident, Smith and his roommate, Andre Potts, were shot and killed by two men who entered the apartment. The evidence at trial established that Smith was a drug dealer and that the men who entered the apartment were looking for drugs and money. Ms. Nottage was the only surviving victim and eyewitness.

Three days after the shootings, while Ms. Nottage was in the hospital for treatment, she told hospital personnel that she did not know the person who shot her. Later, however, police investigators showed her photographic arrays, six photos per array, after reading and having her sign a printed form of admonition specifying (among other things) that the arrays "may or may not contain a picture of the person who committed the crime now being investigated." After not recognizing any photographs in several arrays, Ms. Nottage identified a photo of

2

Bailey in another array as the first person to enter the apartment on the day of the shootings, and as a person who had visited Smith's apartment on five or more occasions before that to buy marijuana. On the photo, she wrote "The one that took my heart" and put her initials under it.

At trial, Ms. Nottage identified Bailey on the photo and as present in the courtroom. She testified that she had looked into his face before she was ordered to lay face down on the floor of the apartment by Bailey and the other person with him, that Bailey had been to the apartment on different occasions before the shootings when he visited Smith on drug transactions, and that she had also seen Bailey at a gas station at some point before the shootings. She testified that she also saw Bailey when he came back to the door of the apartment and fired the last three shots. Ms. Nottage testified unequivocally that Bailey was the man who shot her.

Before trial, the defense listed an expert witness on the subject of eyewitness identification. The witness is an associate professor in legal psychology at Florida International University. The State moved to exclude the defense expert and deposed her before the trial court heard evidence on the motion. The proposed expert had testified in a Florida court on one prior occasion, at a time before the current standard jury instruction on eyewitness identification became effective.[1]

_____

[1] Fla. Std. Jury Instr. (Crim.) 3.9(c) (2012).

Following the evidentiary hearing, the trial court denied the motion and entered a detailed six-page order setting forth the court's findings and conclusions. The defense renewed the request to call its expert witness on eyewitness testimony after the State rested, but the renewed request was also denied.

Bailey objected to: the State's use of Ms. Nottage's handwritten notation, "The man that stole my heart," on the back of Bailey's photograph in the array; the trial court's refusal to exclude Bailey's medical records while incarcerated, and a prosecutor's motion to move those records into evidence by identifying them as "the records from the Department of Corrections as to Walter Bailey from 2006 until the present" (emphasis provided); the form of a prosecution question to a detective regarding his basis for including Bailey's photo in the arrays shown to Ms. Nottage;[2] prosecution questions eliciting testimony from the detectives that Ms. Nottage "was very certain" regarding her identification of Bailey as a shooter based on the photo array; the trial court's refusal to grant a proposed defense jury instruction addressing factors in eyewitness identification (beyond those in the standard jury instruction); and allegedly improper vouching for the reliability of the identification by the prosecution in closing arguments. Motions for mistrial were made on some of these grounds, and on these grounds cumulatively, which were denied.

---

[2] Bailey's name was provided through an anonymous tip.

The jury returned a verdict of guilty on each of the four charges, Bailey was sentenced,[3] and this appeal ensued.

II.     Analysis

A.     Expert Testimony Regarding Eyewitness Identification

Commentators,[4] legislatures,[5] and jurists[6] have called for various reforms regarding the procedures used to establish eyewitness identification, and some of those recommendations have been adopted in Florida.  The admissibility of expert witness testimony regarding the reliability of eyewitness identifications, however, is governed by the abuse of discretion standard of review.  Peterson v. State, 154 So. 3d 275 (Fla. 2014); Simmons v. State, 934 So. 2d 1100 (Fla. 2006).  In the present case, we conclude that the trial court did not abuse its discretion in granting the State's motion to exclude the expert witness testimony on eyewitness identification.

The trial court's six-page order, entered after an evidentiary hearing on the motion and after consideration of the deposition of the proposed defense expert,

---

[3] The jury returned an advisory sentence of life without parole, rather than death, as to Bailey's conviction for the murders of Smith and Potts.

[4] Florida Innocence Commission, Final Report to the Supreme Court of Florida, 18 (June 25, 2012), http://www.flcourts.org/publications-reports-stats/publications/index.stml#innocence ("As eyewitness misidentification is the leading cause of wrongful convictions, the Commission elected to study this issue first."); Brandon L. Garrett, Convicting the Innocent: Where Criminal Prosecutions Go Wrong (2011).  Of 250 exonerations/wrongful convictions studied by Professor Garrett, eyewitnesses had misidentified 76% of the exonerees.  Id. at 48; cf.

5

correctly applied the law and does not constitute an abuse of discretion. On this record, Ms. Nottage's prior observations of Bailey—even though she did not recall his name—distinguish this case from those in which the testimony of a single eyewitness who had never before seen or met the defendant was the linchpin of the prosecution's case.

The trial court also found that the standard eyewitness identification jury instruction approved by the Supreme Court of Florida in 2012 (an instruction proposed by the Florida Innocence Commission) "will provide guidance to the jurors and allow counsel to make argument surrounding the identification made in this case."

### B. Prosecutorial Misconduct

The prosecutors who tried the case below, and the detectives who testified at trial, were experienced and were surely well aware of the limitations on vouching for, or bolstering, Ms. Nottage's testimony. The lead prosecutor essentially ignored the trial judge's ruling, "sustained," to several, repeated defense objections during closing argument. The detectives testified that Ms. Nottage's reaction to

Chelsea Moore, Is Perception Reality?: An Argument Against the Use of Rule 403 for the Exclusion of Eyewitness Identification Expert Testimony, 6 FIU L. Rev. 163 (2010).

[5] See, e.g., North Carolina's Eyewitness Identification Reform Act, N.C. Gen. Stat. § 15A-211 (2009).

[6] Peterson v. State, 154 So. 3d 275, 285 (Fla. 2014) (Pariente, J., concurring).

Bailey's photo in the array was an "astounding" identification, that "she was very certain" about her identification, and that her reaction to Bailey's photo in the array was unforgettable. In closing, the lead prosecutor said that a detective "told you [Ms. Nottage's] reaction is unforgettable, that she literally screamed and hollered, and she tried to crawl out of the bed in the hospital."

Some of the objections were not preserved, but others were, and several were followed by motions for a mistrial. The trial court, after careful consideration of the case law, ultimately denied each of those motions and a renewed motion for mistrial based on cumulative misconduct. Reviewing the trial record, we conclude that the trial court did not abuse its discretion in denying the motions.

The detectives' testimony regarding Ms. Nottage's identification of the photograph approached, but did not quite cross, the line for bolstering; in particular, neither detective said that Ms. Nottage was "a credible witness" or words to that effect. Lee v. State, 873 So. 2d 582, 583 (Fla. 3d DCA 2004). Bailey's reliance on Fleurimond v. State, 10 So. 3d 1140 (Fla. 3d DCA 2009), regarding prosecutorial misconduct in closing arguments, is also misplaced. In that case, the prosecutor referred to an incident never presented as evidence during trial and improperly appealed to "the jury's community sensibilities or civil conscience." Id. at 1149.

7

That said, the prosecutor's apparent disregard for rulings and directives from the trial judge are conspicuous, even in an otherwise-cold record. The lead prosecutor should read and reflect on the trial excerpts and analysis detailed in the appellant's briefs in this case.

Affirmed.