690 So.2d 1369 (1997)
Odell WHEELER, Appellant,
v.
STATE of Florida, Appellee.
No. 96-1199.
District Court of Appeal of Florida, Fourth District.
April 2, 1997.
Richard L. Jorandby, Public Defender, and Marcy K. Allen, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Joseph A. Tringali, Assistant Attorney General, West Palm Beach, for appellee.
PARIENTE, Judge.
Defendant was convicted of sale and possession of a substance in lieu of cocaine and possession of drug paraphernalia. We reverse for a new trial because of improper police testimony concerning the cocaine-selling reputation of the area in which defendant was arrested and because of improper testimony about general behavior patterns of drug dealers.
Defendant was arrested as the result of a buy/bust operation wherein Detective Huffman posed as a cab driver and Detective Miller as his passenger. The defense at trial was that defendant had sold the detective two concrete rocks; he had never agreed to sell cocaine nor had he represented the rocks as such. See § 817.563, Fla.Stat. (1995); State v. Bussey, 463 So.2d 1141 (Fla.1985). Over defense objection, the trial court allowed Detective Miller to testify that the *1370 area where defendant was arrested had been selected for the undercover operation because it was known for crack cocaine sales:
The lead detective had given us a briefing and during that briefing he had told us that there were certain locations around Avenue D that were known to them for the sale of crack cocaine and based on prior operations that I had done with the Fort Pierce Police Department, I had personally bought crack cocaine from the area of avenue D 44 times. So I knew about where it would be.
In Beneby v. State, 354 So.2d 98 (Fla. 4th DCA), cert. denied, 359 So.2d 1220 (Fla. 1978), this court reversed a conviction for possession of cocaine because of improper testimony that the neighborhood in which the defendant was arrested had a "reputation for narcotics" and was known to be inhabited by drug dealers. In Beneby, an officer explained why he had been in the area at the time of the defendant's arrest by stating:
Well, there had been several narcotic arrests made in that area; and the bar at 22nd and Sims has quite a reputation for narcotics in that area. That was the reason we went up there in that alley.
Id. at 99.
In Johnson v. State, 559 So.2d 729 (Fla. 4th DCA 1990), approved, 575 So.2d 1292 (Fla.1991), our court reversed a conviction where at trial the two arresting officers testified about their experience in narcotics arrests and that the location of the arrest had a reputation as a high-crime area. Illustrative of the testimony was the description of the neighborhood as "very well known for high school narcotics, prostitution to robberies and burglaries." Id. at 729. We held that characterizing a neighborhood as well known for narcotics is the "type of guilt by association trial tactic [that] has been universally condemned as constituting reversible error." Id.
Although the supreme court approved our decision in Johnson, the blanket condemnation of "bad neighborhood" testimony in Johnson and Beneby was limited in Gillion v. State, 573 So.2d 810 (Fla.1991). The supreme court held in Gillion that the mere identification of a location as a high-crime area does not result in undue prejudice to a defendant and a per se reversal in all cases.
In Gillion, the police officer testified only to what he had observed on the evening in question. This testimony, the supreme court observed, did not label the area as high-crime. Id. at 811. The supreme court distinguished the testimony concerning the officer's direct observations on the night in question from the impermissible testimony in Beneby, which had been based on past events and the general reputation of the neighborhood.[1] The supreme court further distinguished Beneby by noting that the impropriety in Beneby had been compounded by the prosecutor's references to the reputation of the neighborhood in both the opening statement and closing argument. "Whether or not undue prejudice exists depends on the facts of each case." Id. at 812.
Following Gillion, our court reversed a conviction in Sherrod v. State, 582 So.2d 814 (Fla. 4th DCA 1991), where the police officer had referred to the area of arrest as a "high crime, high prostitution area." The improper testimony was highlighted in closing argument where the prosecutor alluded to the criminal character of the neighborhood. Id. at 815. Similarly, testimony that the arrest scene was known for drug activity was the basis for reversing a conviction for possession and sale of cocaine in Dorsey v. State, 639 So.2d 158 (Fla. 1st DCA 1994).
In Dorsey, as in this case, a plainclothes officer drove an unmarked car and attempted to purchase illegal drugs as part of a police bust/buy operation. At trial, the officer did not merely report his actual observations on the night in question, as in Gillion, but rather impermissibly characterized the area as *1371 one known for drug activity. Id. at 159. The first district correctly observed that subsequent to Gillion, case law has distinguished between "an officer's observations of presently occurring criminal activity and testimony simply characterizing an arrest area as a high crime area." Id. at 158.
In Lowder v. State, 589 So.2d 933 (Fla. 3d DCA 1991), dismissed, 598 So.2d 78 (Fla. 1992), the third district held that characterizing a location as a narcotics area went far beyond the mere reporting of observations made at or near the time of the arrest. "Evidence of this type, impugning the area's reputation, is introduced only to show bad character or propensity, and may unduly prejudice the jury." Id. at 935 (citing Beneby, 354 So.2d at 99).
In this case, the testimony was not based on the officer's observations on the night in question. To the contrary, the testimony concerned the officer's prior experience with cocaine purchases in the area and a briefing that had described the area as being known for the sale of crack cocaine. In closing argument, the prosecutor compounded the prejudicial effect by referring to the area as a known drug area:
And I submit to you that your common sense tells you that if an undercover officer is going to go into a known drug area and attempt to successfully buy drugs from someone who is selling drugs, that in order to be successful, he has to look act, walk, talk and behave like someone who is there to buy drugs.
Later on in the same argument, the prosecutor reiterated:
This is an area known for drug transactions.
Returning to this theme, the prosecutor stated:
And I would suggest to you that your common sense would tell you that the Defendant, who is obviously a user, and knows, you know, that he's in an area where drugs are bought and sold, I mean he's there trying to make the money to buy more for himself.
The argument to the jury was that because the area of his arrest was known for cocaine sales, defendant must have agreed to sell cocaine. See Dorsey, 639 So.2d at 159. The detective's testimony, especially when highlighted in closing argument, prejudiced defendant by impermissibly implying guilt through association.[2]
The prejudice flowing from impermissible testimony about the reputation of the neighborhood was compounded when the prosecutor repeatedly elicited testimony about procedures common to other drug transactions and the officers' experience with other drug sales. For example, Detective Miller was allowed to testify over defense objection that in his "opinion and experience," people dealing in drugs "stand on the corners and street edges."
We have repeatedly condemned the admission of testimony by police officers about general behavior patterns of drug dealers. See Dean v. State, 690 So.2d 720 (Fla. 4th DCA 1997), and cases cited therein. "[E]very defendant has the right to be tried based on the evidence against him, not on the characteristics or conduct of certain classes of criminals in general." Lowder, 589 So.2d at 935. The only purpose of the testimony regarding criminal behavior patterns "is to place prejudicial and misleading inferences in front of the jury." Nowitzke v. State, 572 So.2d 1346, 1356 (Fla.1990).
For example, in Shelton v. State, 654 So.2d 1295, 1295 (Fla. 4th DCA 1995), we condemned testimony by a police officer that "it is not unusual to not find marked money on a drug seller after a sale." In Hargrove v. State, 431 So.2d 732, 732 (Fla. 4th DCA 1983), we condemned rebuttal testimony of a police officer that based on his experience, the post-arrest statement that "I don't mess with the stuff" is a phrase uttered frequently by drug dealers to throw suspicion off themselves. See also Osario v. State, 526 So.2d 157 (Fla. 4th DCA 1988) (testimony concerning *1372 experience with common drug-courier practices irrelevant and prejudicial).
In this case, impermissible reputation of the neighborhood testimony, compounded by improper drug dealer behavior testimony, unduly prejudiced defendant. We are unable to conclude that these errors were harmless beyond a reasonable doubt in view of the fact that the entire defense was premised on defendant's lack of intent. See State v. DiGuilio, 491 So.2d 1129 (Fla.1986); Harris v. State, 655 So.2d 1263 (Fla. 4th DCA 1995); cf. Watson v. State, 672 So.2d 71 (Fla. 4th DCA), review denied, 679 So.2d 775 (Fla.1996) (admission of testimony concerning undercover officer's attempt to purchase narcotics in narcotics areas was mere background information that did not unduly prejudice defendant).
On remand, the prosecutor should be cautious in attempting to elicit, and the trial court cautious in admitting, testimony that might fall within the prohibitions set forth in this opinion.
REVERSED AND REMANDED.
GLICKSTEIN and STEVENSON, JJ., concur.
NOTES
[1] Justice Barkett, in a specially concurring opinion, stated that whether the testimony was based on observations of other drug activity that evening, or past experience and reputation evidence, none of the testimony would have had any relevance except to impermissibly suggest that because the defendant had been in that neighborhood, he must have been guilty. The danger flowing from such testimony is "to infer guilt by association." Gillion v. State, 573 So.2d 810, 812 (Fla.1991) (Barkett, J., specially concurring).
[2] The prosecutor was so intent on introducing evidence classifying the arrest area as a high-crime area that she urged the trial court to take judicial notice of the area as a high-crime area. The trial court properly did not grant the request.