TAYLOR, J.
Appellant was convicted of burglary of a conveyance. He argues that the trial court erred in allowing the state to introduce evidence of his arrest in an area known and targeted by police for its high rate of car thefts and burglaries. We agree that admission of this evidence, compounded by the prosecutor’s opening and closing remarks concerning the area’s reputation, was reversible error.
Appellant was arrested for burglary of a conveyance during a decoy operation in downtown Fort Lauderdale. Officers conducting the decoy operation testified that they observed appellant walk up to the decoy vehicle, reach inside, and remove a duffle bag, six pack of beer, and cell phone, which the officers had placed in the vehicle earlier. When the officers approached the vehicle and ordered appellant to stop, appellant said he had bought the beer and was holding the duffle bag and cell phone for a friend.
At trial, appellant repeatedly objected to testimony and prosecutorial remarks about the high number of auto burglaries in the area that prompted the decoy operation. Appellant first objected during opening statements. Explaining why the decoy operation was established, the prosecutor began:
[T]he evidence will show that the [sic] Jimmy Latimore, the defendant in this case, committed the crime of burglary of a conveyance.
The State is going to call two officers. You are going to hear from them, Officers Hoffman and Dietrich, and you are going to hear that these two officers work in a special unit. And what this special unit does is this special unit goes over analyzes [sic] of where there is crime in certain areas and responds accordingly by working within a decoy operation.
And you are going to hear back in November the special unit in the area where this crime occurred — this crime, the State is going to prove to you, that there was a rash—
Over defense objection, the prosecutor continued:
The evidence will show, and the officers will tell you, that there were many *958 break-ins in this area of cars. There were many car thefts. So what the officers do to combat this is set up a decoy.
Appellant again objected when the officers testified about setting up decoy operations in areas where crime statistics indicated there had been a high number of auto burglaries. The officers testified that the downtown area where appellant was arrested was an area shown by their crime analysis program, Com Stat, to have statistically higher incidences of theft. Defense counsel objected and moved for a mistrial each time the officers characterized this location as a high burglary area.' The trial judge overruled his objections and denied his motions for mistrial.
On cross-examination, both officers acknowledged that they did not videotape or photograph the burglary and explained that they did not do so because of budget restrictions. They also explained that they did not dust the vehicle, cell phone, or beer for fingerprints because appellant did not touch these items. They did not dust the duffle bag because it was made out of nylon.
Appellant testified and denied taking the items from the decoy vehicle. He further accused the officers of having harassed him on three different occasions before his arrest.
During closing argument, the prosecutor told the jury:
Defendant made a bad choice on that day. In an area known for auto thefts, the officers in this case set up and [sic] operation, an operation designed to combat that. The defendant sure enough fell into what they were trying to do.
In Florida, evidence that a criminal defendant was arrested in a high crime area is generally inadmissible. Such evidence is usually considered irrelevant to the issue of guilt and unduly prejudicial because of its tendency to establish guilt by association. Johnson v. State, 559 So.2d 729 (Fla. 4th DCA 1990)(reversing a conviction where officers testified that the location of the defendant’s arrest had a reputation as a high-crime area); Beneby v. State, 354 So.2d 98 (Fla. 4th DCA 1978)(reversing a conviction for heroin possession because of improper testimony that the neighborhood in which the defendant was arrested had a “reputation for narcotics” and was known to be inhabited by drug users).
Although Johnson was approved by the Florida Supreme Court,[1] the supreme court clarified that testimony characterizing the location of a defendant’s arrest as a high-crime area may not always result in undue prejudice and require reversal. See Gillion v. State, 573 So.2d 810 (Fla.1991). The court held that whether undue prejudice exists depends on the facts of each case. Id. at 812.
In Gillion, a police officer testified that he had observed several street cocaine transactions taking place in the area where the defendant was arrested. The court concluded that such testimony was not an impermissible characterization of the location as a high-crime area, but, rather, testimony concerning the officer’s direct observations at the arrest scene. As such, the court reasoned, the defendant was not unduly prejudiced by the officer’s statement. The court distinguished Beneby, wherein the police officer’s testimony and prosecutor’s remarks during both opening statement and closing argument focused on past criminal activity in the arrest location and the bad reputation of the area. Id. at 811-12.
After Gillion, we decided Wheeler v. State, 690 So.2d 1369 (Fla. 4th DCA 1997). *959 There, we held that testimony that the police had targeted the area of appellant’s arrest because of the area’s reputation for crack cocaine sales was inadmissible and prejudicial. In reversing the defendant’s drug conviction, we distinguished Gillion, noting that the testimony was not based on the officer’s observations of any ongoing criminal activity but on his prior experience with cocaine purchases in the area. Id. at 1371.[2] Our decision was consistent with several other post-Gillion cases, where courts found reversible error in the admission of police testimony characterizing an arrest location as a high crime area instead of describing observations of criminal activity then occurring in the area.[3]
In this case, the officers did not testify about any observations of car burglaries made at or near the time of appellant’s arrest. Instead, they testified about general data and crime statistics which showed the area’s high incidence of burglaries. Contrary to the state’s contention, this evidence was not the type of “relevant context testimony” referred to in Gillion. Id. at 811. It was not background evidence necessary to establish the elements of burglary. Any probative value that this evidence had was outweighed by its tendency to prejudice appellant by implying guilt through association.
Moreover, as in Beneby and Wheeler, the prosecutor highlighted this improper testimony by commenting on it both during his opening statement and closing argument. We cannot say beyond a reasonable doubt that the combined effect of the state’s evidence and remarks was harmless and did not contribute to the verdict. See State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986).
REVERSED and REMANDED.
POLEN, C.J., and STEVENSON, J., concur.

. State v. Johnson, 575 So.2d 1292 (Fla.1991).

. In Wheeler, we reversed for a new trial not only because of the improper area reputation testimony, but also because of improper police testimony about general behavior patterns of drug dealers. We concluded that these statements by police witnesses combined to unduly prejudice the defendant with their "guilt by association” implications.

. Sherrod v. State, 582 So.2d 814 (Fla. 4th DCA 1991); Dorsey v. State, 639 So.2d 158 (Fla. 1st DCA 1994); Lowder v. State, 589 So.2d 933 (Fla. 3d DCA 1991).