971 So.2d 225 (2008)
Otis PUGH, Appellant,
v.
STATE of Florida, Appellee.
No. 4D06-3393.
District Court of Appeal of Florida, Fourth District.
January 2, 2008.
*226 Carey Haughwout, Public Defender, and David John McPherrin, Assistant Public Defender, West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Heidi L. Bettendorf, Assistant Attorney General, West Palm Beach, for appellee.
GROSS, J.
Otis Pugh appeals his conviction for soliciting to deliver cocaine. An undercover police officer testified that Pugh asked for "a 20," which the officer explained was "street terminology for $20 worth of crack cocaine." The officer based his translation of the slang term on his "knowledge and experience of working in that area," where crack cocaine is often purchased. On cross-examination, the defense tried to establish that the term "20" might have meant marijuana or "just about anything." On redirect examination, the officer explained that in the "particular location" of the sting, crack cocaine was the drug of choice, so "20" referred to crack cocaine. The defense objected to the testimony on redirect examination.
We distinguish this case from Wheeler v. State, 690 So.2d 1369 (Fla. 4th DCA 1997). In that case, an officer testified concerning his prior experience with cocaine purchases in an area and the neighborhood's reputation for the sale of crack cocaine. The purpose of the evidence was to imply "guilt through association," to convince the jury "that because the area of [the] arrest was known for cocaine sales, defendant must have agreed to sell cocaine." Id. at 1371. The essence of the holding in Wheeler was that the "probative value" of the "bad neighborhood" testimony was "substantially outweighed by the danger of unfair prejudice." See § 90.403, Fla. Stat. (2006).
Here, the officer's testimony had a probative value apart from its characterization of the neighborhood. The officer was explaining the basis of his opinion on the meaning of the term "20." A slang phrase derives its meaning from those in the community who use the term; the speakers have tacitly agreed on a meaning. Based on his street experience, the undercover officer testified as an expert witness "regarding street language in the drug culture." Slater v. State, 356 So.2d 69, 70 (Fla. 1st DCA 1978); see Daniels v. State, 381 So.2d 707, 710 (Fla. 1st DCA 1979) (quoting Slater); Howard v. State, 738 So.2d 372, 374 (Fla. 5th DCA 1999) (holding that detective qualified as expert in "street slang" based on her "heritage as an African American raised in the Orlando area for thirty years" and her experience "using the slang as an undercover police officer").
*227 In addition to the location where it is used, a slang word also draws meaning from context. A "twenty" means something different to a Wal-Mart cashier processing a sale than it does in an open air crack market. Here, the danger of unfair prejudice did not substantially outweigh the high probative value of the undercover officer's testimony translating drug argot. See § 90.403, Fla. Stat. (2006).
On the scoresheet issue we find harmless error. The defendant scored out to nonstate prison sanctions under either scoresheet. Without focusing on the scoresheet, the trial court exercised its discretion and determined that a nonstate prison sanction was not appropriate, sentencing defendant to four years in prison. We reverse that portion of the sentence ordering a driver's license revocation under section 322.055(1), Florida Statutes (2005). Solicitation to deliver cocaine is not one of the enumerated offenses contained in the statute. See Huesca v. State, 841 So.2d 585, 586 (Fla. 2d DCA 2003).
Affirmed in part, reversed in part to correct the sentencing documents.
WARNER and FARMER, JJ., concur.