WARNER, J.
Appellant, Jevon Wimberly, appeals his conviction for attempted second degree murder with a firearm, claiming fundamental error in both the prosecutor’s closing argument and the jury instructions. He claims that the prosecutor made an improper appeal to racial prejudice and that the jury instructions contained an error as to the elements of the charged crime. We conclude that the prosecutor’s comments were improper but did not rise to the level of fundamental error, and the jury instructions were also not fundamentally erroneous. We affirm the conviction and sentence.
This case arises out of an incident in which appellant Wimberly was found to have shot the victim, Stuart Williams. The shooter and the victim were both African-Americans. On the afternoon of the *300 shooting Williams was retrieving some personal items from the vehicle of Ms. Thompson, a friend of Williams. Several other women were present. As he was taking items from the car, a man approached the side of the car and stated, ‘What’s up, where you at?” The man lifted his shirt and pulled out a gun. Williams said, “Oh, that’s him,” and started running. One witness, Ms. Greene, testified that she heard the shooter say, “Yeah, that’s the n — er.”[1] Williams testified that he recognized the shooter as an individual he knew by the nickname “Dread.”
The shooter chased Williams, firing at him until the gun was out of bullets. One of the shots hit Williams in the back of his neck. After Williams was shot, he continued to run until he came upon Ms. Thompson and jumped into her car. Williams was covered in blood and asked, “Am I going to die?” Ms. Thompson asked Williams if he knew who shot him, and Williams replied, “Dread.” Shortly thereafter, Williams’s friends called for an ambulance and he was taken to the hospital.
Williams remained in the hospital for five days but ultimately survived the shooting. Initially, Williams did not tell the police who shot him. However, he later met with police officers and identified Wimberly in a photographic line-up as the person who shot him. Williams also identified Wimberly at trial as the shooter and the man he knew by the name “Dread.”
Williams, a convicted felon who was incarcerated at the time of the trial, was the only witness to actually identify Wimberly in open court as the shooter. Another witness at the scene of the incident, Ms. Stephenson, Williams’s girlfriend at the time, had identified Wimberly as the shooter in a photographic line-up a few days after the shooting, but at trial she was unable to identify him as the person who shot Williams. Ms. Stephenson claimed at trial that her memory had lapsed but did admit that the shooter’s name was Dread.
Likewise, at trial Ms. Thompson could not remember the shooter’s face but admitted that she had told people that she did not want to be involved in the case. She did not disagree with her prior statement regarding the shooter’s physical description, when confronted with it by prosecutors. Another witness, Ms. Greene, also maintained that she could not remember what the shooter looked like. Outside of the presence of the jury the prosecutor claimed that Ms. Greene was feigning ignorance. The trial court allowed the jury to hear portions of her taped statement to police.
The defense presented witnesses to dispute Wimberly’s appearance, particularly his haircut, on the date of the incident, thus defending based upon misidentification.
During the closing argument the prosecution made the following comments:
[PROSECUTOR SAPAK:] I’ll proffer to you, Ladies and Gentlemen, this is the type of neighborhood where people attack each other. Even in crimes that involve guns, even in crimes that involve people getting shot, it’s a close community where people want to protect each other, they certainly don’t want to talk to police and they certainly don’t want to talk to prosecutors who could be considered an extension of the police, it’s the nature of the game and it’s not an
*301 opportunity where the prosecution gets to pick their witnesses, it’s just the way it is.
[[Image here]]
[PROSECUTOR BOUTRUS:] He [Stuart Williams] was reluctant because, as Mr. Sapak said, this is a close community. The police, the State Attorney’s Office, people like to handle them things themselves, deal with them on their own. Like Stewart [sic] said, like Ashley said, or like Tara said, don’t tell the story, that’s what Stewart [sic] said while he’s in the ambulance, don’t tell anybody about it, I don’t want to, you know, be involved with the police, with the whole judicial system.
No objection was made to these comments or to similar comments by the prosecutors. However, the defense did object on the grounds of relevancy when one of the prosecutors said, “Every day you wake up, we wake up, and you hear about people shooting people all over the place.” The prosecutor stated that her comment went “to the fact that people in this community protect each other,” arguing that the jurors needed to understand that the witnesses were reluctant to testify because “this is a way of life” for them. Defense counsel stated that he had no objection to that line of argument; he simply objected to the comment regarding “people shooting people,” and the trial court sustained his objection but denied the motion for mistrial.
Although he was charged with attempted first degree murder with a firearm, the jury found Wimberly guilty of attempted second degree murder with a firearm. The trial court sentenced him to twenty-five years in prison.
On appeal, Wimberly now claims that the prosecution’s argument constitutes fundamental error. He must do so, because no objection was lodged to the prosecutor’s comments during closing arguments about the community and its tendency to protect its members. In fact, defense counsel stated he had no objection to the statements about the community. Wimberly claims, however, that this was an appeal to racial prejudice. Although we do not think it was an appeal to racial prejudice, we disapprove of the argument made because it injected “facts” not contained in the evidence. Nevertheless, we do not conclude that it was fundamental error reaching down to the validity of the verdict itself.
While wide latitude is permitted in closing argument, such latitude does not extend to improper argument. Gore v. State, 719 So.2d 1197, 1200 (Fla.1998). “Counsel must contemporaneously object to improper comments to preserve a claim for appellate review. Unobjected-to comments are grounds for reversal only if they rise to the level of fundamental error.” Merck v. State, 975 So.2d 1054, 1061 (Fla. 2007). Improper comments rise to the level of fundamental error only where the error “reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.” Brooks v. State, 762 So.2d 879, 899 (Fla.2000).
While we wholeheartedly adhere to the principle that racial prejudice has no place in our system of justice, see Robinson v. State, 520 So.2d 1, 7 (Fla.1988); State v. Davis, 872 So.2d 250, 253-54 (Fla.2004), we do not view the prosecutor’s comments as an appeal to racial prejudice. Instead, the prosecution improperly, and without any supporting evidence, bolstered its case against Wimberly by remarks regarding the characteristics of the neighborhood to provide a reason why the state’s witnesses *302 were all vague as to the identification of Wimberly at trial.
Wimberly relies on cases reversing convictions based on improper argument or evidence concerning the reputation of the neighborhood. Our supreme court has held that introducing the fact that a defendant was arrested in a high-crime area may be unduly prejudicial under some circumstances, but not always. See Gillion v. State, 573 So.2d 810, 811-12 (Fla.1991). We also have determined that such evidence may be prejudicial.
For example, in Wheeler v. State, 690 So.2d 1369 (Fla. 4th DCA 1997), we reversed the defendant’s convictions for drug-related crimes because of improper testimony regarding the neighborhood’s reputation for the sale of crack cocaine. The Wheeler court found that the police officer’s testimony, which was highlighted in closing argument, prejudiced the defendant by impermissibly implying guilt through association. Id. at 1371. The purpose of the evidence was to convince the jury that because the area of the defendant’s arrest was known for cocaine sales, the defendant must have agreed to sell cocaine. Id. Likewise, in Beneby v. State, 354 So.2d 98, 99 (Fla. 4th DCA 1978), we reversed a conviction for possession of cocaine where the prosecutor described the area in which the defendant was arrested as “an area that is known to be inhabited by drug users” and a police officer testified that the area “has quite a reputation for narcotics.”
Turning to the substance of the prosecution’s closing arguments in this case, these remarks were improper and objectionable. Contrary to the state’s argument, these remarks were not a “fair comment” on the evidence. There was no evidence at trial that the neighborhood where the victim was shot “is the type of neighborhood where people attack each other” or that it was a “close community” where people “want to protect each other [and] they certainly don’t want to talk to police.” In fact the prosecutor himself told the jury that he would “proffer” that the witnesses were from that type of community, thus acknowledging that he had no evidence to support it. The closing arguments were improper, for the reason that these comments were completely unsupported by any evidence at trial. See, e.g., Huff v. State, 437 So.2d 1087, 1090 (Fla.1983) (noting that the state attorney is prohibited from commenting on matters unsupported by the evidence produced at trial).
Nonetheless, Wimberly has not met his burden to show fundamental error. The prosecution’s remarks, while improper and unsupported by the evidence at trial, were made within the context of attempting to explain the reluctance of certain witnesses and the inconsistencies in their statements. See, e.g., Dennis v. State, 817 So.2d 741, 755 (Fla.2002) (prosecutor’s closing argument which included “testimony” that no threats were made to accuser to get him to implicate defendant, while improper, was not fundamental error, where other evidence in the case suggested that accuser was not threatened). The record is replete with witnesses’ memories being vague and requiring refreshment with pri- or statements. Further, the victim himself told his girlfriend to “tell no stories” and refused to identify his assailant the day of the incident. Ms. Thompson, another witness, affirmatively testified of her unwillingness to “get involved.” It would have been clear to the jury that many of the witnesses were reluctant to testify. Therefore, unlike cases such as Wheeler, the argument concerning the nature of the neighborhood was not designed to imply that Wimberly was “guilty by association.” They did not denigrate the defense. Nor were the remarks of such an inflammatory *303 nature so as to prejudice the jury against Wimberly. Cf Stephenson v. State, 31 So.3d 847 (Fla. 3d DCA 2010) (holding that fundamental error occurred, in the prosecution of a mother for aggravated manslaughter of her child, when the prosecutor commented on the fact that the mother had contemplated having an abortion during the course of her pregnancy with the child). Rather, the prosecution’s comments in this case, albeit misguided, were an attempt to explain the problems with the credibility of the state’s own witnesses.
Accordingly, the prosecutors’ comments, while improper, did not rise to the level of fundamental error. The victim himself clearly identified Wimberly as his attacker at trial and prior to trial. One of the eyewitnesses identified him from a photo line-up the day of the incident. She confirmed her photo identification even though she stated at trial that her memory had faded. Another of the eyewitnesses couldn’t remember much at trial, but she agreed that her statements to police the day of the incident describing the appearance of the shooter were fresher than her imperfect testimony at trial. We cannot say that the verdict could not be obtained without the assistance of the error.
Wimberly also complains that the prosecutor brought out the fact a witness heard the shooter say, “Yeah, that’s the n — er.” Wimberly contends that the use of this vile epithet was irrelevant and served only as a device to inflame and prejudice the jury. The defense did not object at trial to its utterance.
“[T]he introduction into evidence of a racial or ethnic slur is not per se reversible error.” Rich v. State, 18 So.3d 1227, 1230 (Fla. 4th DCA 2009). In Rich, this court held that the defendant’s use of a racial slur, specifically “cracker,” during a drug transaction was irrelevant, because it did not tend to prove or disprove any element or material fact in the case.[2] The Rich court distinguished cases where the defendant’s use of a racial slur was relevant to show the defendant’s state of mind as an element of the crime charged. Id. at 1229.
Here, Wimberly was charged with attempted first degree murder, which required the state to prove that the shooting was committed with premeditation. Contrary to Wimberly’s argument, the use of the racial slur was relevant to the shooter’s state of mind as an element of the crime charged. See, e.g., Clinton v. State, 970 So.2d 412, 414 (Fla. 4th DCA 2007) (evidence that defendant, after stabbing victim, screamed “I’m going to kill you n — er” was properly admitted to prove defendant acted with premeditated design).
Finally, we reject, without further discussion, Wimberly’s claim of fundamental error in the jury instruction. The error alleged did not involve a material element of the crime and appears to be a typographical error which we conclude could not have been misconstrued by the jury.
For the foregoing reasons, we affirm the conviction and sentence.
TAYLOR and MAY, JJ., concur.

. The prosecutor got the witness to say this term twice, claiming that she did not hear the witness the first time. However, defense counsel did not object to the testimony concerning the shooter’s use of this racial slur.

. However, the court determined that the error in admitting the racial slur was harmless. Id. at 1230.