GERBER, J.
The defendant appeals his convictions for possession of cocaine and driving with a suspended license. On the possession of cocaine conviction, the defendant argues that the trial court erred in denying his motion in limine. The motion in limine sought to preclude evidence that the defendant was arrested in a “high drug traffic area” and that the defendant engaged with a “known drug dealer.” On the driving with a suspended license conviction, the defendant argues that he was denied due process because that charge was not included in the charging document until after his conviction. We agree with both arguments and reverse the defendant’s convictions on both charges.
We have reviewed the court’s order denying the defendant’s motion in limine for an abuse of discretion, limited by the rules of evidence. See Edwards v. State, 39 So.3d 447, 448 (Fla. 4th DCA 2010) (“The standard of review of a trial court’s ruling on a motion in limine is abuse of discretion. However, the trial court’s discretion is limited by the rules of evidence, and a trial court abuses its discretion if its ruling is based on an erroneous view of the law or on a clearly erroneous assessment of the evidence.”) (citations and quotations omitted).
Section 90.403, Florida Statutes (2011), provides, in pertinent part: “Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice.... ” “Testimony concerning the location of a defendant’s alleged illegal activities is not unduly prejudicial. Whether or not undue prejudice exists depends on the facts of each case.... ” Gillion v. State, 573 So.2d 810, 812 (Fla.1991). See also Sheffield v. State, 869 So.2d 748, 749 (Fla. 4th DCA 2004) (“Whether identifying the location as a high crime area is unduly prejudicial must be evaluated on a case-by-case basis.”) (citation omitted).
Where the identification of the arrest location as a high drug crime area is isolated, courts generally have found that the testimony is not unduly prejudicial. See, e.g., Lelieve v. State, 7 So.3d 624, 631 (Fla. 3d DCA 2009) (harmless error where a testifying detective “made a single isolated comment that the house the surveillance team was watching was known for selling drugs. The comment was made in the context of, and to explain, the chain of events, that is, what the team was doing at that particular location. No further mention was made of the reason for the surveillance by any of the other officers who testified at trial, nor was it mentioned in closing argument.”); Sheffield, 869 So.2d at 749-50 (harmless error where a testifying detective characterized the location where the defendant was arrested as “known for a lot of drug activities”; the comment was isolated, the trial court sustained an objection and gave a curative instruction, and the prosecutor never repeated or referred to the officer’s statement); Davis v. State, 562 So.2d 443, 444 (Fla. 2d DCA 1990) (harmless error where an officer described the neighborhood where the defendant sold drugs as a “drug supermarket”; “The officer’s isolated characterization of the neighborhood was a brief comment and was not repeated in the remaining testimony or mentioned in the closing argument. The testimony was not a focal point of the trial.”).
However, where the identification of the arrest location as a high drug crime area is emphasized, courts generally have found that the testimony is unduly prejudicial. See, e.g., Wheeler v. State, 690 So.2d 1369, 1370-71 (Fla. 4th DCA 1997) (reversing conviction where the trial court allowed a detective to testify that the area where the defendant was arrested had been selected *1293 for an undercover operation because it was known for crack cocaine sales and, in closing argument, the prosecutor compounded the prejudicial effect by repeatedly referring to the area as a known drug area); Sherrod v. State, 582 So.2d 814, 815 (Fla. 4th DCA 1991) (reversing conviction where an officer testified that the place of arrest was a bad area for drugs, the officer “hit this area quite often,” and during closing arguments, the prosecutor alluded to the neighborhood’s criminal character); Beneby v. State, 854 So.2d 98, 99 (Fla. 4th DCA 1978) (reversing conviction where an officer testified that his purpose for being in the area at the time of arrest was because “there had been several narcotic arrests made in the area” and the area had a “reputation for narcotics,” and during opening statement, the prosecutor stated that the area was “known to be inhabited by drug users”).
Here, the identification of the arrest location as a high drug crime area was emphasized. During opening statements, the state alleged: “[The arresting officers] were conducting surveillance at that address because of reports of drug sales going on in that area. They were surveil-ling to determine if anybody was selling or buying drugs at that area.” (emphasis added). During the state’s case-in-chief, over the defendant’s objection, the arresting officer testified that he and another officer “were conducting a surveillance of a known target, narcotics location.” (emphasis added). The following exchange then occurred:
Q. ... Why were you at that residence?
A. We had received numerous complaints from residents surrounding the residential apartments as well as the Street Crime Unit and other members had made several arrests from people coming and going from that location.
Q. While you were doing your surveillance, what happened?
A. While we’re doing surveillance we observed a vehicle pull up.... It was a ... van pulled up to the residence in question.
Q. And what happened when it pulled up to the residence?
A. [The defendant] exited the vehicle and made contact with the target, a narcotic seller at that location we were surveilling.
(emphasis added). The second officer similarly testified that “we received a bunch of citizen complaints ... about [an apartment building]” and went there to conduct surveillance. The following exchange then occurred:
Q. How did you encounter [the defendant], what did you observe that day? A. The Defendant arrived at the apartment building in a ... van.... The Defendant exited his car from the driver’s side. Walked into the parking lot and made contact with an individual who we identified as the target of our narcotics complaint.
(emphasis added). During closing arguments, the state repeatedly emphasized the defendant’s presence at this known drug location: “[The defendant] ... was there to purchase drugs ... He was there that day for one reason. He was there to buy drugs ... [The defendant] was there to meet [the dealer]. That’s why he went there that day. He went there to purchase drugs.”
We recognize that the state’s purpose for presenting this evidence may have been simply to explain why this investigation occurred. However, our supreme court has explained that “when the only relevance of such a statement is to show a logical sequence of events leading up to an arrest, the better practice is to allow the *1294 officer to state that he acted upon a ‘tip’ or ‘information received,’ without going into the details of the accusatory information.” Keen v. State, 775 So.2d 263, 270 (Fla.2000) (citation and quotations omitted).
Here, the state did not follow the better practice. Instead, the state and its witnesses emphasized the details of the accusatory information. Thus, we must reverse the defendant’s conviction for possession of cocaine and remand for a new trial on that charge.
We also reverse the defendant’s conviction for driving with a suspended license. For whatever reason, the state’s information included only the possession of cocaine charge and not the driving with a suspended license charge. Apparently, no one noticed this oversight, because the court conducted a non-jury trial on the driving with a suspended license charge simultaneously with the jury trial on the possession of cocaine charge. The defendant did not object. However, after the court found the defendant guilty of the driving with a suspended license charge and pronounced sentence on that charge, the prosecutor apparently noticed the information’s omission of that charge and handwrote that charge onto the information.
The defendant argues that he was denied due process because the driving with a'suspended license charge was not included in the information until after his conviction. We agree. See State v. Gray, 435 So.2d 816, 818 (Fla.1983) (“[A] conviction on a charge not made by the indictment or information is a denial of due process of law. If the charging instrument completely fails to charge a crime, therefore, a conviction thereon violates due process.”) (internal citations omitted); Castillo v. State, 929 So.2d 1180, 1181 (Fla. 4th DCA 2006) (“It is a basic tenet of constitutional law that due process is violated when an individual is convicted of a crime not charged in the charging instrument.”) (citations omitted).
The state argues that the defendant waived this argument by failing to object. However, “the complete failure of an accusatory instrument to charge a crime is a defect that can be raised at any time — before trial, after trial, on appeal, or by habeas corpus.” Gray, 435 So.2d at 818 (citations omitted).
Although the foregoing discussion is sufficient to reverse the defendant’s convictions on both charges, we have considered the defendant’s other arguments seeking reversal. Without further discussion, we conclude that those other arguments lack merit.

Reversed and remanded for proceedings consistent with this opinion.

MAY, C.J., and GROSS, J., concur.