DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**MICHAEL SCOTT LUCIER,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D14-1834

[ January 27, 2016 ]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Steven Levin, Judge; L.T. Case No. 562013CF000616A.

Carey Haughwout, Public Defender, and Jeffrey L. Anderson, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Allen R. Geesey, Assistant Attorney General, West Palm Beach, for appellee.

TAYLOR, J.

Michael Scott Lucier appeals his convictions and sentences for fleeing or eluding, resisting an officer without violence, possession of cocaine, and attempted tampering with evidence. Appellant argues that the trial court erred by permitting the state to: (1) introduce evidence that appellant engaged in a hand-to-hand transaction at a fence outside a house known for drug activity; and (2) present evidence and argument on appellant's failure to produce a witness. We reverse on both issues.

On the day of appellant's arrest, Detective Dini was patrolling Avenue D in Fort Pierce in an unmarked vehicle. Detective Cunzo was in the passenger seat. As they passed Wilson's Grocery Store near the corner of Avenue D and 11th Street, Detective Dini saw appellant standing near a chain-linked fence at the back of the store parking lot. He also noticed a vehicle parked in the lot. Appellant was interacting with another person on the other side of the fence.

Detective Dini made a U-turn and headed back towards the store. He saw appellant get into the parked car and drive away. As appellant

approached the intersection of 11th Street and Avenue D, he rolled through a stop sign and made a right turn onto Avenue D. At that point, Detective Dini activated his lights and sirens.

Appellant continued to drive from 11th Street to 7th Street. Detective Dini followed a car length behind appellant as appellant drove past several areas where he could have pulled over safely. When appellant approached 7th Street, he signaled to make a right turn.

Detective Dini tried to pull alongside appellant and told appellant to pull over. Appellant asked him "why?" but continued driving. Detective Dini was able to maneuver his vehicle so as cut off appellant's car, and appellant eventually stopped. Detective Dini exited his car and approached appellant's. He saw appellant throw a small white square object in his direction. The object hit Detective Dini's vehicle. Detective Dini explained that he did not stop to pick up the object because he intended to arrest appellant for fleeing, and he would have placed himself in jeopardy by bending down to pick up the object while appellant was still behind the wheel.

Detective Cunzo went around to the passenger side of appellant's vehicle while Detective Dini remained on the driver's side. Detective Dini told appellant to step out of the vehicle. Appellant remained in his vehicle and asked the detectives why they pulled him over. Detective Dini responded that appellant should step out of the vehicle because he was under arrest. Detective Cunzo reached inside the passenger side of the car, put the car in park, and unlocked appellant's seatbelt. When appellant did not comply with his third command, Detective Dini removed him from the vehicle.

After Detective Dini placed appellant in handcuffs, he went to retrieve the object that appellant threw out of the car. He took pictures of the substance on the ground. Although the object had been pulverized into a powder, Detective Dini collected what he could. There were no other objects or debris, such as gum or cigarettes, on the ground.

Detective Dini field tested the substance, which tested positive for cocaine. A chemist from the Indian River Crime Lab confirmed that the substance was cocaine.

At the beginning of trial, defense counsel moved in limine to prohibit the state from offering any evidence that Detective Dini saw appellant conducting a hand-to-hand transaction in the parking lot of the grocery store. The court permitted the state to present evidence that Detective

Dini saw appellant near a closed business talking to someone on the other side of fence, but ruled that the prosecutor could not elicit testimony about appellant engaging in a hand-to-hand transaction near a drug house.

During direct examination, Detective Dini testified that he saw appellant standing in the parking lot of a closed business talking to someone on the other side of a fence.

During cross-examination of the detective, the following exchange took place:

> [Defense counsel]: Let me ask you now, you observed Mr. Lucier's car in this parking area around 2:00 o'clock in the afternoon?
> [Detective Dini]: Yes.
> [Defense counsel]: All right, is it – is it illegal for him to be in this parking (sic) in the afternoon of a closed business?
> [Detective Dini]: No.
>
> . . . .
>
> [Defense counsel]: And when he rolled through the stop sign, did he cut off any traffic?
> [Detective Dini]: No, he didn't cut off any traffic.
>
> . . . .
>
> [Defense counsel]: You were concerned this day because you – you testified that Mr. Lucier was fleeing and eluding.
> [Detective Dini]: Yes.
> [Defense counsel]: And that gives you a heightened sense of awareness?
> [Detective Dini]: Yes.
> [Defense counsel]: Was it also now the day after another officer unfortunately was killed –
> [Detective Dini]: Yes.
> [Defense counsel]: - after a high speed pursuit or fleeing?
> [Detective Dini]: Uh, yes.
> [Defense counsel]: Okay. Did that also contribute to your heightened sense of awareness?
> [Detective Dini]: Yes.
>
> . . . .

[Defense counsel]: Do you know who Mr. Lucier was talking to at the, uh, at the Avenue D lo-location?
[Detective Dini]: No.
[Defense counsel]: Male or female?
[Detective Dini]: I couldn't tell, but I'm assuming a male?
[Defense counsel]: Assuming?
[Detective Dini]: Yes.
[Defense counsel]: So you don't know?
[Detective Dini]: I don't know.
[Defense counsel]: Were you aware of what conversation they were having?
[Detective Dini]: No, I do not.
[Defense counsel]: Were you aware as to why Mr. Lucier was there?
[Detective Dini]: No idea why.

Before the state's re-direct examination of the detective, and outside the presence of the jury, the state argued that defense counsel opened the door to testimony about the hand-to-hand transaction. The trial court agreed and permitted the prosecutor to elicit testimony that Detective Dini saw appellant conduct a hand-to-hand transaction by a drug house.

During re-direct, Detective Dini testified that he observed appellant conduct a hand-to-hand transaction by a house known for drugs, and that based on this observation, he focused on appellant and followed him with a heightened awareness to look for drugs. Later during re-cross-examination, he clarified that he did not actually see anything exchange hands.

Appellant testified that on the afternoon of his arrest he was on his way to Publix with his girlfriend. Another friend called him and asked for a ride. Appellant left his girlfriend at Publix and went to Wilson's grocery store to meet his friend. When he arrived at the grocery store, he did not see his friend. Appellant asked the people on the other side of the fence if they had seen his friend. They told him that they saw her walking down Avenue D. One of the men asked appellant for a cigarette and appellant gave him one. After that exchange, appellant got back into his car and went looking for his friend. He denied buying or using drugs.

Appellant admitted that he drove through the stop sign at the intersection of Avenue D and 11th Street. He saw the flashing lights behind him, but he did not realize that the emergency vehicle was following him and trying to pull him over. As he turned on 7th Street and pulled over, he tossed a cigarette out the window. When the police tried to stop

4

him, he asked them "why." The detectives pulled him out of the car and kneed him in the back while they handcuffed him. They did not identify themselves or tell him why they pulled him over.

On cross-examination of appellant, the prosecutor asked for the name of the friend appellant had planned on meeting. Appellant responded with her name. The prosecutor asked appellant whether he told the detectives the name of his friend when they arrested him. Appellant testified that the detectives never asked him. Appellant explained that he did not disclose the name of his friend to the state before trial, because she did not witness the arrest or the events directly before the arrest. However, he acknowledged that she could corroborate why he was at the grocery store. During redirect, he testified that he did not know her current location and he did not have her new phone number.

During closing, the prosecutor argued, without objection, that appellant had to provide an innocent explanation for his presence in the grocery store parking lot and that appellant prevented the jury from hearing that from his friend because he did not provide her name until trial.

The jury found appellant guilty on all counts.

Appellant first argues that the trial court erred in permitting the state to introduce evidence that he was conducting a hand-to-hand transaction near a house known for drug activity. Through the testimony of Detective Dini and several comments during closing arguments, the state emphasized appellant's presence at a known drug house.

Appellant disagrees that defense counsel opened the door to testimony regarding the character of appellant's location near the time of his arrest. The state argues that defense counsel opened the door to this testimony by his cross-examination of the detective, which was misleading in suggesting that appellant's actions in the parking lot were entirely innocent and that the detective acted unreasonably in following appellant's vehicle. We conclude that while the door may have been opened to allow testimony that the detective observed appellant in a hand-to-hand transaction, it was not opened wide enough to allow prejudicial references to appellant's presence near a drug house.

It is well settled that it is error to allow references to the character of the location of a suspect's arrest. *See Fleurimond v. State*, 10 So. 3d 1140, 1146 (Fla. 3d DCA 2009) ("Florida law disapproves references to the area in which a defendant is observed as a location known to be a place where

5

drugs are sold because such evidence is irrelevant to the issue of guilt."); *Latimore v. State*, 819 So. 2d 956, 958 (Fla. 4th DCA 2002) ("[E]vidence that a criminal defendant was arrested in a high crime area is generally inadmissible [because] [s]uch evidence is usually considered irrelevant to the issue of guilt and unduly prejudicial . . . ."); *Jordan v. State*, 104 So. 3d 1291, 1293-94 (Fla. 4th DCA 2013) (reversing because the court permitted the state to elicit and emphasize testimony that defendant was arrested in an area where the police were on surveillance for drug sales); *Lowder v. State*, 589 So. 2d 933, 935 (Fla. 3d DCA 1991) ("In a prosecution for possession of illegal drugs, the fact that a police officer knows that an arrest scene is a reputed narcotics area does not prove anything in issue and is 'patently prejudicial'." (citing *Gillion v. State*, 573 So. 2d 810 (Fla. 1991)).

In this case, testimony about appellant's proximity to a drug house was irrelevant and unduly prejudicial by implying guilt through association. *See Latimore*, 819 So. 2d at 959; *see also Fleurimond*, 10 So. 3d at 1146 ("[T]he police detective's testimony that the house where he observed Fleurimond was a location that the detective knew to be selling narcotics is exactly the type of testimony condemned as 'patently prejudicial' by Florida courts."). Defense counsel's cross-examination of the detective did not open the door wide enough to permit repeated inquiries about appellant standing near a drug house. This error in allowing references to the character of the location could not be harmless beyond a reasonable doubt. *See Beneby v. State*, 354 So. 2d 98, 99 (Fla. 4th DCA 1978) (holding that a police officer's knowledge of a location as a "narcotics area doesn't tend to prove anything in issue and can only serve to prejudice the jury"); *State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986) ("The harmless error test . . . places the burden on the state . . . to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction.").

The prosecutor unduly emphasized the fact that appellant was seen near a drug house. He asked the detective three times on redirect whether he saw appellant next to a drug house. During closing arguments, the prosecutor compounded the error by mentioning several times that appellant engaged in a hand-to-hand transaction by a drug house. Although appellant confirmed that he exchanged something with someone, he denied that it was drugs. Thus, contrary to the state's position, his testimony would not render the drug house testimony cumulative or harmless.

Appellant also argues that the trial court erred by allowing the state to

comment on appellant's failure to produce a witness to corroborate his story. This issue of burden shifting arose during appellant's testimony. Appellant testified that he was in the parking lot of the grocery store to meet a friend and give her a ride. On cross-examination, the prosecutor asked appellant his friend's name and where she was. The trial court overruled defense counsel's objection that the state's inquiry would constitute comments on appellant's failure to call a witness. The court also permitted the prosecutor to ask if appellant had ever disclosed this witness's name to the prosecutor or his counsel, and whether appellant believed that the witness's testimony would have been beneficial to his case. Later, during closing argument, the prosecutor compounded the error by continuing to emphasize that appellant had not produced the witness and telling the jury that the defendant had to provide an "innocent explanation" for his presence at the grocery store.

"[T]he state cannot comment on a defendant's failure to produce evidence to refute an element of the crime, because doing so could erroneously lead the jury to believe that the defendant carried the burden of introducing evidence." *Gutierrez v. State*, 798 So. 2d 893, 894 (Fla. 4th DCA 2001) (quoting *Jackson v. State*, 575 So. 2d 181, 188 (Fla. 1991)). The exception to this rule occurs "when the defendant voluntarily assumes some burden of proof by asserting the defense of alibi, self-defense, and defense of others, relying on facts that could be elicited only from a witness who is not equally available to the state." *Ramirez v. State*, 1 So. 3d 383, 385 (Fla. 4th DCA 2009) (quoting *Jackson*, 575 So. 2d at 188). The Florida Supreme Court has explained "that this exception is inapplicable where the defendant 'never assume[s] any responsibility for presenting [evidence] to the jury as part of an affirmative defense.'" *Warmington v. State*, 149 So. 3d 648, 652 (Fla. 2014) (quoting *Hayes v. State*, 660 So. 2d 257, 266 (Fla. 1995)) (alteration in original).

Here, appellant did not assert an affirmative defense; he was not required to provide exculpatory evidence. When appellant took the stand, he testified that he was in the parking lot to meet a friend. This testimony was to rebut the state's theory that appellant was in the parking lot to buy drugs. Appellant did not create an issue for which he carried the burden of proof; he simply asserted a defense to the state's theory of the case. *Warmington*, 149 So. 3d at 655 ("Simply asserting a defense to a crime does not create any issue for which a defendant 'carries [the] burden of proof.'" (quoting *Hayes*, 600 So. 2d at 265)).

Here, the prosecutor engaged in improper burden shifting, both during the prosecutor's cross-examination of appellant and during closing argument. The prosecutor asked not only about the witness's

7

whereabouts and appellant's failure to disclose her name to either the state or the defense, he also asked if the witness would corroborate appellant's story and then pointed out that she was not there at trial. This line of inquiry was improper because it implied that appellant had a duty to call her as a witness at trial.

Contrary to the state's contention that the prosecutor mentioned only the absence of the witness, the record shows that the prosecutor suggested that the defendant had the burden to produce the witness at his trial. During closing argument, the prosecutor stated "now it is absolutely critical that this defendant explain why he was behind Wilson's . . . . He has to explain that. So the way he explains it, because he has to have an innocent explanation . . . . So how he explains that is, he's picking up this mysterious woman . . . ." The prosecutor told the jury that if appellant's argument were true "wouldn't you have expected her to be there to back up his story to corroborate?" These comments clearly shifted the burden of proof to the defendant.

On this record, we cannot conclude that the errors mentioned above were harmless beyond a reasonable doubt. *See DiGuilio*, 491 So. 2d at 1138-39. Accordingly, we reverse appellant's convictions and sentences and remand for a new trial.

*Reversed and Remanded.*

WARNER and FORST, JJ., concur.

*     *     *

**Not final until disposition of timely filed motion for rehearing.**

8